(No. 12280.—Judgment affirmed.)

SWIFT & Co., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FRANK BLUM, Defendant in Error.)

*Opinion filed April 15, 1919.*

1. WORKMEN'S COMPENSATION—*when an employee is injured in course of employment.* An employee is injured in the course of his employment when the injury occurs within the period of his employment at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it.

2. SAME—*when injury arises out of employment.* For an injury to arise out of the employment there must be some causal relation between the employment and the injury, and while it is not necessary that the injury be one which ought to have been foreseen or expected, it must be one which after the event may be seen to have had its origin in the nature of the employment.

3. SAME—*burden of proof is on the applicant.* The burden of proof rests upon the applicant for compensation to furnish evidence from which an inference can logically be drawn that the injury arose out of and in the course of the employment, but such proof may be circumstantial as well as direct and need not be beyond all reasonable doubt.

4. SAME—*what degree of proof justifies inference as to manner of injury.* To justify an inference being drawn by the Industrial Board that an injury arose out of and in the course of the employment the evidence must be such as will induce a reasonable man to draw such conclusion after weighing the probabilities raised by the evidence.

5. SAME—*finding of Industrial Board cannot be set aside if record contains competent evidence to sustain it.* If the record contains competent evidence to sustain the finding of the Industrial Board in making an award the finding cannot be set aside, although the Supreme Court might feel that a different conclusion would have been reached if it had been called upon to decide the question in the first instance.

6. SAME—*when injury in fight arises out of and in course of employment.* Where an employee whose duty it is to repair leaks in steam pipes in a large packing plant is injured in a fight with the foreman of a department whither the employee had been summoned by the blowing of a whistle in accordance with the custom

when a leak was discovered the injury is one arising out of and in the course of the employment, where the evidence warrants the conclusion that the altercation was not personal but grew out of matters connected with the injured employee's work.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

THOMAS M. COEN, and JOHN E. KEHOE, for plaintiff in error.

JOHN A. BLOOMINGSTON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

An application was filed with the Industrial Board on October 13, 1914, by Frank Blum, defendant in error, for adjustment of claim for injuries alleged to have been incurred by him while in the employ of Swift & Co. The arbitration committee decided that he was not entitled to compensation. On review the Industrial Board awarded compensation of $7.50 per week for a period of 416 weeks from April 10, 1914, and ordered that if at the expiration of that time Blum were living, he should recover from the plaintiff in error a pension of $257.60 a year, payable semimonthly, as long as he might live. The case was taken to the circuit court of Cook county by writ of *certiorari* and the judgment of the Industrial Board was affirmed. The trial judge certified that the cause was one proper to be reviewed by this court, and it is here on writ of error.

At the time of the injury, April 3, 1914, Frank Blum was employed by Swift & Co. at its packing plant at the Union Stock Yards in Chicago. At and before the time of the injury it was his duty, together with other employees in the steam-fitting department, to look after water-pipe leaks in the different buildings, including that occupied by the pork department. The custom was, throughout these

buildings, in case of pipe leaks and other matters where repairs were needed, to blow a whistle, in response to which an employee of the steam-fitting department would come. Frank Nieukirk was foreman of sewing and tying in the smoked-meat room on the fourth floor of house No. 19 of the pork department. On the Sunday prior to the injury Nieukirk told Blum there was a leak in one of the pipes on the fourth floor, and according to Nieukirk's testimony Blum replied that he would take care of it. On Thursday before the injury Frank Selen, who worked with Blum in the steam-fitting department, attempted to repair the leak but without success, and the pipe kept leaking. Nieukirk directed the whistle be blown for one of the pipe repairmen. There was no response, and he ordered the whistle blown again, and then the third time. Selen, upon hearing the whistle, found Blum and told him of the call. Blum started at once for Nieukirk's department and Selen followed a short distance behind. When Blum entered the smoked-meat room he walked at once towards Nieukirk, and, according to the latter's testimony on the hearing, the first he knew Blum came up to him, took him by the shoulder, pulled him around and asked, "What do you want?" Nieukirk testified: "I had not spoken to Blum before. Blum said, 'What in hell do you fellows mean by blowing a whistle?' I says, 'You know what we want; we want that leak repaired.' I says, 'I want to work in harmony with you as much as I can; I tried to get you to fix this leak since last Sunday; nothing has been done to remedy it since.' He says, 'Well, I haven't got time to fix the leak.' I says, 'All right; that is all I want to know; I will take it up with the superintendent's office and see that this leak is done; I don't like to go over you boys' heads, but that is what I am going to do this time.' He says, 'All right; go ahead; I will fix you.' He stepped around with an attitude as if he was going to strike me, and said, 'All right, you bastard, go ahead; I will fix you.' He stepped

around in an attitude to strike and I hit him with my fist. He had a valve or pipe. He raised his hand up to strike,— clear up, in a manner of striking me. I am sure about that." Nieukirk further testified that he had never had any trouble before with Blum, and that Blum was apparently a harmless individual though of a quarrelsome disposition.

When struck by Nieukirk, Blum fell to the cement floor and sustained a basal fracture of the occipital bone, either by the blow or the fall. The testimony shows, without contradiction, that after the injury he was confined to his bed until August, and after that was unable to walk, except with difficulty; that his memory was gone and he could not articulate properly. On the hearing of this proceeding he testified, but it was apparent that he remembered very little, if anything, in regard to the accident or how it occurred. He did, however, testify that he had no feeling or grudge against Nieukirk and so far as he remembered did not raise his hand to strike him; that he never wanted to have a scrap there. According to Nieukirk's testimony, also, there had never been any trouble between himself and Blum before that time. Selen, Blum's assistant, who followed into the room and according to his testimony was about thirty feet away at the time of the accident, does not understand English very well. He testified that he did not see Blum start to hit Nieukirk; that Nieukirk and Blum were both talking loud and that Blum was moving his hands. Miss Owens, another witness, who was working in the room, did not see Blum raise the pipe or valve which he had in his hand over his head, but testified that he had the pipe in his hand and that his hand was drawn back, as we understand the record, about six inches. Mrs. Brzana, another employee, was sewing bags, with her back to Nieukirk and Blum at the beginning of their interview but turned around to watch them, and she testified, in answer to a question, that Blum did not raise his hand to strike Nieukirk, but afterwards, on cross-examination, stated that

she may not have seen all that took place. Timothy Kelleher was called by plaintiff in error and was the best situated to hear and see all that took place. He stated that Nieukirk, at the time Blum came into the room, was piling hams on a truck; that witness was close at hand; that Blum stood at the end of the truck nearest witness; that he heard them talking loud, but that the first he took heed of was Nieukirk telling Blum to get away, which he did three times, and then Blum threw his right hand back about six inches and Nieukirk immediately struck him on the jaw and knocked him down.

These are all the witnesses who testified with reference to this occurrence. All of them, as we understand the record, testified before the arbitrator, but their testimony was not heard before the Industrial Board except that of Mrs. Brzana, which seems to have been taken before the board. All of these witnesses except Kelleher were called by defendant in error, and it is argued by counsel for plaintiff in error that defendant in error is bound by the testimony of Nieukirk as to what took place, as Nieukirk was called by him and was the only witness who testified in detail as to what happened, and that, so far as any of the other witnesses testified, their testimony tends to corroborate that of Nieukirk, while counsel for defendant in error insists that Nieukirk's testimony is contradicted in material matters, especially as to Blum threatening to strike him or raising his hand in a threatening attitude. Counsel for both parties are very vehement in their arguments in the briefs as to what actually occurred and contradict each other very positively, each claiming that the statements of opposing counsel as to certain facts are not borne out by the record. We think it is clear that Nieukirk's testimony as to Blum raising his hand in a threatening attitude to strike him with a valve or iron in his hand, before Nieukirk struck Blum, is not corroborated in the record by the testimony of any other witness. The most that can be said is that Kelleher

testified that Blum drew his hand back and that the motion was such that witness would think that something was going to happen, but there is no testimony, outside of Nieukirk's, that the hand was raised high in a threatening manner. Four witnesses testified to seeing the blow struck. Nieukirk's testimony is to the effect that he struck the blow immediately upon Blum raising his hand in a threatening manner, and while it is true that none of these witnesses except Kelleher were so situated that they could see all that took place or that they claimed they saw all that took place, it would seem somewhat surprising if Blum had raised his hand in a threatening manner, as testified by Nieukirk, that some of them would not have seen that act, for two of them did testify that Blum drew his hand back.

The chief question discussed in the briefs is whether or not this accident arose out of and in the course of Blum's employment. This court has said that an employee is injured in the course of his employment when the injury occurs within the period of his employment at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) We have said also that there must be some causal relation between the employment and the injury; that it is not necessary that the injury be one which ought to have been foreseen or expected, but it must be one which after the event may be seen to have had its origin in the nature of the employment. (*Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31; see, also, *In re McNicol,* 215 Mass. 497.) The courts do not usually disagree as to the general fundamental principles necessary for recovery under the Workmen's Compensation act, but in the great variety of circumstances under which they are called upon to apply these principles they sometimes disagree as to the application of the law to the facts. As this court said in *Pekin Cooperage Co.* v. *Industrial Com. supra,* two cases are sel-

dom precisely alike in their facts, and the opinion further states (p. 35) : "All concur in the rule that the accident, to be within the Compensation act, must have had its origin in some risk of the employment. No fixed rule to determine what is a risk of the employment has been established. Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures the other, it may be inferred that the injury arose out of the employment." The opinion in that case reviews a large number of cases in other jurisdictions where the injury was caused by disagreements of fellow-employees, and it is apparent from an examination of those various cases that they are not all consistent, and, as stated in that opinion, not all in harmony with the ruling of this court in that case.

Counsel for defendant in error in this connection argues at length that under the reasoning of this court in *Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96, and other cases of like nature where men employed as night watchmen were attacked, the test whether they were injured in the course of their employment was stated to be whether they were engaged in duties such as were likely to cause the watchmen to deal with people who were likely to attack them, but we do not think the *Ohio Building Vault Co. case,* and other cases of like nature as to watchmen or night policemen, are controlling on the question here before us. Those cases were dealing with questions very different from the questions here involved. The case of *Pekin Cooperage Co.* v. *Industrial Com. supra,* and cases therein cited and reviewed, are much more in point on the question here under consideration.

The argument of counsel for plaintiff in error is that the accident did not occur in the course of and arise out of the employment of Blum, because, after Blum reached the room where Nieukirk was and found out what was wanted, it was his duty to go at once and repair the leaking pipe, but that he chose to remain at the place where Nieukirk was working and engage him in a verbal dispute; that from the time he was told what was wanted, until the accident, he had been acting out of the course of his employment and was gratifying merely his own personal feelings in carrying on a dispute. Counsel also argues that even though Nieukirk was the aggressor in a physical conflict, he testified that he was prompted to strike Blum in what he considered self-defense, and that therefore he (Nieukirk) was not acting within the line of his employment. Counsel for defendant in error argues that even though Nieukirk's story is literally true as to how the altercation started and as to everything that happened there, yet it is clear from uncontradicted testimony that Blum went there in response to the whistle calling him; that Nieukirk was insisting that he had complained several times about the leak and that it had not been fixed, and that while talking about the matter Nieukirk struck Blum without any provocation; that in any event the talk was about the work of the master; that neither had a personal grudge against the other; that the blow was struck after the argument regarding the master's work, and, whether the foreman's explanation is correct or not, that the accident arose out of and in the course of the employment; that even though it is true the blow was struck either as the result of anger on the part of Nieukirk or a mistaken idea as to it being necessary for his self-defense, it grew out of a discussion over business and not out of the personal matters of either Blum or Nieukirk. Counsel on both sides have cited numerous authorities as tending to support their respective positions in this case, but none of them are so similar on

the facts that we deem it necessary to review or distinguish them.

This court has said that the burden of proof rests upon the applicant to furnish evidence from which an inference can logically be drawn that the injury arose out of and in the course of the employment, but that such proof may be circumstantial as well as direct. (*Ohio Building Vault Co.* v. *Industrial Board, supra,* and cases there cited.) We have also said that it is impossible to lay down any rule as to the degree of proof which is sufficient to justify an inference being drawn by the Industrial Board, but that the evidence must be such as would induce a reasonable man to draw it; that where there is ground for comparing and balancing probabilities at their respective values, and where the more probable conclusion is that for which the applicant contends, the arbitrator is justified in drawing an inference in favor of the applicant. (*Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352.) It has also been said that what is evidence of a fact and what is merely guessing at the fact cannot be defined by any formula that one can invent; that what is wanted is to weigh the probabilities, to see if there be proved facts sufficient to enable one to have some foothold or ground for comparing and balancing the probabilities and their respective values, one against the other. (*Owners of Ship Swansea Vale* v. *Rice,* 4 B. W. C. C. 298.) While the burden of proof is on the applicant to prove his case, this does not mean that he must demonstrate it beyond all reasonable doubt. It only means that there must be evidence in his favor upon which a reasonable man can act. If the evidence, though slight, is sufficient to make a reasonable person conclude that the applicant was injured while performing his duties in the course of his employment or duties incidental to that employment, then the case is proved. (*Marshall* v. *Owners of Ship Wild Rose,* 3 B. W. C. C. 514.) In proceedings under the Workmen's Compensation

law this court's consideration of the evidence is limited to the inquiry whether the record contains competent evidence to sustain the award, and if so, the weight of evidence to the contrary will not be considered. (*Pekin Cooperage Co. v. Industrial Com. supra.*) The only question before the court is whether the Industrial Board was justified, on the facts proved, in drawing the conclusion that it has drawn. The finding of the Industrial Board is not to be set aside if warranted by the evidence, although the court might feel that a different conclusion would have been reached if the members of the court had been called upon to decide the question in the first instance. *VonEtte* v. *Globe Newspaper Co.* (Mass.) L. R. A. 1916D, 641.

We find much discussion in the briefs as to who was the aggressor in the fight in which Blum was injured. While such question might have some bearing on whether the dispute arose out of and in the course of the employment or was purely a personal matter between the parties, we do not think it is necessarily decisive. Considerable space is taken up in the briefs as to the comparative size and physical strength of Nieukirk and Blum. We find nothing in the record that clearly and definitely shows the size, weight or physical ability of Blum, and, moreover, we do not regard the comparative size and physical strength of these men as a controlling fact in deciding the question here under consideration. We think there is evidence in the record that justified the Industrial Board in finding that the altercation grew out of matters connected with Blum's work, and that therefore the accident arose out of and in the course of his employment, and that the altercation was not purely a personal one, entirely outside of the scope of such employment. The fact that Blum was not actually doing the special work of repairing when he was injured does not alter the case. He was where he was expected to be, preparatory to fixing the leak.

While the case, upon the facts and application of the law, is close, we hold that there is sufficient competent evidence in the record to justify the conclusion of the Industrial Board, and that therefore the courts are bound by that finding.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part in this decision.