## CHERRY et al. v. MAGNOLIA PETROLEUM CO. et al. (No. 1935.)

Court of Civil Appeals of Texas. Beaumont. Feb. 13, 1930.

Rehearing Denied Feb. 19, 1930.

E. C. Gaines, of Austin, for appellants.

Campbell, Myer & Foster, of Houston, for appellees.

WALKER, J. This was a compensation case. The Industrial Accident Board awarded compensation to the surviving widow and minor children of H. L. Cherry, an employee of Magnolia Petroleum Company, who died September 10, 1915, as the result of wounds received September 2, 1915, in a personal encounter with J. J. Williams, another employee of the Magnolia Petroleum Company. The American Indemnity Insurance Company was the insurer under the terms of the Workmen's Compensation Act, and, not being satisfied with the award, prosecuted its appeal to the district court of Montgomery county, where, upon a trial by the court without a jury, judgment was entered in its favor against all the claimants. Only the minor defendants, through their mother, their guardian ad litem, have prosecuted this appeal.

■ Their first proposition is that the insurance company failed to give due notice of its dissatisfaction with the award of the Industrial Accident Board. In the lower court they offered, over the objection of appellees, certain testimony to the manner in which this notice was served. No question is made as to the time of service. We do not detail this testimony, because, on the issues made, though received by the court, it was without probative force. Before this case was called for

trial, the parties entered into a written agreement to the effect that due notice was given by the insurance company of its dissatisfaction with the award. Appellants filed no pleading attacking this agreement in any way. Therefore, evidence limiting its effect was not admissible.

We take from appellants' brief the following statement of the circumstances under which H. L. Cherry was injured:

"H. L. Cherry was the engineer in charge and J. J. Williams was the fireman at the plant of Magnolia Petroleum Company three miles west of Conroe where Williams killed Cherry.

"All of the eye witnesses, one being a negro man and the other John Glenn being dead at the time of this trial, the defendants were forced to rely upon the version of the difficulty as given by the man who killed Cherry. His statement on the material part follows:

" 'Well, about, I suppose it was about 4:30 o'clock in the evening we got orders from Richards to shut down the station, and of course Mr. Wage was the operator of the shift, we were on. Well, in shutting down I always cut the fires out of all the boilers but one and Mr. Cherry sent Mr. Wage to supper so—I had always made it the custom in the evenings to repair the pumps. I went ahead and worked on my pump and fixed it up for Bennett who comes on at night. Mr. Cherry had got notice to start up—prior to that evening on several different occasions they notified me a few minutes when they got ready from Richards they would start up so he gave me an order. In the meanwhile all my fires were warm and the targets up in the boilers—when he got the notice why he walked out there by me I suppose—ten feet. I was busy fixing the pump. Never said a word. When I seen him I turned the pumps on and went up around and turned all the fire out in the boilers so they could start the steam up which took nearly all the steam and water out of the boilers—very low—I went back to my pump and he walked up to where I was at work and looked up at the steam guage; turns around to me he says: "I thought I told you on several different occasions I was going to have one hundred pounds of steam out of those boilers or kick you off the job?" I told him, I says: "Mr. Cherry, I have tried in every way I could to get along with you—fired these boilers and kept this steam up. I have been living in Texas some forty years. I have never allowed any man to kick me yet," and he hauled off and knocked me down; when I got up why he had his knife in his hand. Of course, I seen he had a larger man than I was, had to defend myself, so I opened mine—so the cutting of both of us started: we were both cut pretty bad.'

"The cross examination merely deals with details and does not in any material re-

spect change the act of how the difficulty started or the cause of it, as stated above."

Upon these facts the trial court made the following conclusion:

"(b) That the case as made and proved before the court is not compensable under the workman's compensation law of this State, applicable to the facts as presented."

In construing these facts, appellants assert that their legal effect must be determined by the Employers' Liability Act of 1913 (Acts 33d Leg. c. 179). Under that act they say that it was necessary for them to show only that H. L. Cherry received his injuries "in the course of his employment," and that it was not necessary to show that his injuries also "arose out of his employment." For the purposes of this opinion we accept their construction of the act of 1913. Appellants' proposition is that "an injury is in the course of employment if received while one is in the course of his work." They also insist that "it is not material as to who was the aggressor." In deducing these propositions, we do not think appellants have correctly construed the cases cited by them. In Brown v. Bristol Last Block Co., 94 Vt. 123, 108 A. 922, 923, it was said:

"It is enough now to say that an injury arises in the course of the employment when it arises within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment."

In Cox v. Kansas City Refining Company, 108 Kan. 320, 195 P. 863, 864, 19 A. L. R. 90, it was said:

" 'In the course of his employment,' as a phrase, simply means that it happened while he was at work in his employer's service. The phrase relates to the time, place, and circumstances under which the accident occurred."

From the definitions given by these two cases, for an injury to be received "in the course of the employment," the employee must be *reasonably filling the duties of his employment.* Also, in determining this issue, the jury or court trying the case must take into consideration "the circumstances under which the accident occurred." Appellants cite Western Indemnity Company v. Pillsbury, 170 Cal. 686, 151 P. 398, 405; Heitz v. Ruppert, 218 N. Y. 148, 112 N. E. 750, L. R. A. 1917A, 344; and Swift & Co. v. Industrial Commission, 287 Ill. 564, 122 N. E. 796, 797, as illustrating the application of these principles to particular facts and as sustaining their propositions above stated. The following were the facts in the Pillsbury Case:

"That L. Rudder, applicant herein, was injured by accident on the 12th day of April, 1914, while in the employment of defendant, Ocean Shore Railroad Company, and that said accident arose out of and happened in

the course of said employment and in the manner following: (a) Said Rudder was a section foreman in charge of a special gang of 15 or 20 section hands, mainly Greeks, in the employment of the Ocean Shore Railroad Company, at or near Mussel Rock, San Mateo county, Cal. (b) One George Pappas, a Greek, was not doing his work in a proper way, and applicant Rudder remonstrated with him and took the shovel from his hands and showed Pappas how to do the work right, but Pappas continued to do the work in the wrong manner, and Rudder told him to drop his shovel and get his time. Pappas did not drop his shovel, and Rudder undertook to take it from him. Pappas resisted and struck Rudder with the flat side of the shovel, Rudder, saying, 'I will make you drop that shovel,' stepped back a few paces, and laid hold of a jackstick five or six feet long and as large around as one's wrist, and returned to where Pappas was. Pappas meantime had seized a rock, but, upon the approach of Rudder, dropped the rock and struck at Rudder with the shovel, missing him, whereupon Rudder struck Pappas on the side of the head with the jackstick. Falling to his knees by reason of the force of the blow, Pappas grabbed Rudder about the feet, tripped him, and threw him between the rails, climbed on top of him, and, for the period of about 15 minutes, tore the flesh on Rudder's face, hands, and arms with his teeth, inflicting severe lacerations which were followed by blood poisoning and serious and prolonged disability resulting therefrom."

To determine the legal effect of the facts thus found, the court reviewed many authorities, and concluded its discussing, saying:

"Under these and other authorities, it is clear that an injury caused by the attack of a third person may be accidental so far as the injured person is concerned. On the other issue, whether the injury occurred in the course of the employment of Rudder, it must also be held that the finding of the commission was sustained by sufficient evidence. The question, simply stated, is whether the injury resulted from Rudder's undertaking to do something in the line of his duty, or whether it occurred as the result of his going outside the scope of his employment and entering upon a private quarrel for reasons of his own. The facts found justify the inference that Rudder was hurt in an altercation which grew out of his justifiable efforts to maintain his authority as foreman and to protect the property of his employer intrusted his care."

In that case Rudder was the aggressor, but, in attempting to take the shovel away from his employee, he was in direct discharge of the duties of his employment. His injuries "grew out of his justifiable efforts to maintain his authority as foreman and to protect the property of his employer intrusted

to his care." Giving due weight to the time, place, and circumstances under which Rudder was injured, the court sustained an award in his favor. The facts were as follows in the Heitz Case:

"Claimant on July 14, 1914, was employed as a driver by Jacob Ruppert, Incorporated, which was engaged in the business of carrying on a brewery. He brought his horses into the stable, where Guth, a fellow workman, and he unharnessed the horses and proceeded to wash them off with the hose. Claimant told Guth he was using too much water on the horses, and Guth then intentionally sprinkled some water on claimant. Shortly after claimant, having briefly left the place where the horses were being washed, was returning to his work of cleaning the horses, when he met Guth. As they passed claimant touched Guth on the shoulder, saying: 'George, don't do that again.' Guth slapped claimant on the shoulder, and as claimant turned around Guth's finger stuck in claimant's left eye, causing injuries by reason of which it was necessary to remove the eye."

Analyzing these facts, after citing many authorities, the court said:

"The evidence in this case is sufficient to permit the commission to find that the following facts sought to be proved were established: That it was an obligation of claimant's employment to take care of the horses which he drove and to see that they were not injured by injudicious wetting or otherwise by his fellow workmen; that in the course of their employment, while the two men were at work, a quarrel or argument over the wetting of the horses arose and personal injury grew out of the physical contact resulting from the quarrel."

It thus appears that due weight was given to the "circumstances under which the accident occurred," and in thus weighing the testimony the court recognized that an inference could have been drawn that the claimant was not injured in the course of his employment. In Swift & Co. v. Industrial Commission, it was the duty of Blum, the claimant, to fix leaks in the steam pipes. It was Nieukirk's duty to call Blum by blowing a whistle. Having trouble with one of his pipes, Nieukirk directed the whistle to be blown. There was no response, and he ordered the whistle blown a second and third time. Blum came in finally, and in an insulting manner, according to the testimony of Nieukirk, inquired of him, "What do you want?" Believing that Blum was going to assault him, Nieukirk struck him with his fist, knocking him down, and inflicting upon him serious injuries. Nieukirk's version of the facts was controverted by other testimony.

In this case the court also reviews many authorities, and concludes that one is injured in the course of his employment "when the

injury occurs within the period of his employment at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it." After carefully reviewing the facts of the accident, and concluding that there was testimony that Blum was not the aggressor, and that inferences could be drawn from the testimony that he was injured while reasonably fulfilling the duties of his employment, the court affirmed the judgment in his favor, saying, however:

"While the case, upon the facts and application of the law, is close, we hold that there is sufficient competent evidence in the record to justify the conclusion of the Industrial Board, and that therefore the courts are bound by that finding."

Now, under the principles discussed by the cases cited by appellants, the question simply is whether Cherry was injured while undertaking to do something in the line of his duty, or whether he was injured as the result of going outside the scope of his employment and entering upon a private quarrel for reasons of his own. Cherry had the right to reprimand Williams, if he were not in the proper discharge of his duties. Even if he had been in the wrong in approaching Williams as he did, and the injury had grown out of his efforts to discharge the duties of his employment, his injury would have been received "in the course of his employment." But that inference cannot be drawn from the facts in this case. As the foreman, he reprimanded Williams for the manner in which he was discharging his duties, and threatened to kick him off the job. Williams replied that he had never been kicked off a job. Then, for reasons of his own, he assaulted Williams with an open knife. This assault was not in the course of his employment, nor in making the assault was he discharging any of the duties of his employment; that is, he was not trying to make Williams keep the correct amount of steam, nor was he trying to protect his master's property, nor was he trying to eject Williams from the premises.

It is our conclusion that the only inference to be drawn from these facts is that Cherry went outside the scope of his employment and entered upon a private quarrel of his own for reasons of his own. This is our construction of the legal effect of the facts, but that conclusion is not necessary for an affirmance of the judgment of the lower court. The trial court heard the evidence, and, with all the facts before him, made the conclusion that the case was "not compensable under the Workmen's Compensation Law." The most that can be said in favor of appellants is that they raised the issue that the injuries occurred "in the course of the employment" of their father. That issue having been submitted to the trial court and found against their contention, they are bound thereby.

Appellants have many other propositions and assignments relating primarily to matters of procedure. Because of the disposition made of the two propositions discussed, the others become immaterial.

It follows that the judgment of the trial court should be, and is hereby, in all things affirmed.