## CHERRY v. MAGNOLIA PETROLEUM CO. et al.

### No. 1491—5764.

Commission of Appeals of Texas, Section A.

Jan. 6, 1932.

E. C. Gaines, of Austin, for plaintiff in error.

Campbell, Myer & Foster, of Houston, for defendants in error.

CRITZ, J.

This case arose out of the Workman's Compensation Act of 1913 (Acts 33rd Leg. c. 179). It is shown by the record that H. L. Cherry was employed by Magnolia Petroleum Company as an engineer at its plant near Conroe, in Montgomery county, Tex. One J. J. Williams was employed as a fireman at the same plant. While both were so employed, a difficulty arose between them which resulted in a fight. In the course of the fight, Cherry received injuries which shortly thereafter resulted in his death, which occurred on September 2, 1915. We copy the following from the opinion of the Court of Civil Appeals in 24 S.W. (2d) 549, 550, which shows the circumstances of the difficulty:

" 'H. L. Cherry was the engineer in charge and J. J. Williams was the fireman at the plant of Magnolia Petroleum Company three miles west of Conroe where Williams killed Cherry.

" 'All of the eye witnesses, one being a negro man and the other John Glenn being dead at the time of this trial, the defendants were forced to rely upon the version of the difficulty as given by the man who killed Cherry. His statement on the material part follows:

" ' "Well, about, I suppose it was about 4:30 o'clock in the evening we got orders from Richards to shut down the station, and of course Mr. Wage was the operator of the shift, we were on.' Well, in shutting down I always cut the fires out of all the boilers but one and Mr. Cherry sent Mr. Wage to supper so—I had always made it the custom in the evenings to repair the pumps. I went ahead and worked on my pump and fixed it up for Bennett who comes on at night. Mr. Cherry had got notice to start up—prior to that evening on several different occasions they notified me a few minutes when they got ready from Richards they would start up so he gave me an order. In the meanwhile all my fires were warm and the targets up in the boilers—when he got the notice why he walked out there by me I suppose—ten feet. I was busy fixing the pump. Never said a word. When I seen him I turned the pumps on and went up around and turned all the fire out in the boilers so they could start the steam up which took nearly all the steam and water out of the boilers—very low—I went back to my pump and he walked up to where I was at work and looked up at the steam gauge; turns around to me he says: 'I thought I told you on several different occasions I was going to have one hundred pounds of steam out of those boilers or kick you off the job?' I told him, I says: 'Mr. Cherry, I have tried in every way I could to get along with you—fired these boilers and kept this steam up. I have been living in Texas some forty years. I have never allowed any man to kick me yet,' and he hauled off and knocked me down; when I got up why he had his knife in his hand. Of course, I seen he had a larger man than I was, had to defend myself, so I opened mine—so the cutting of both of us started; we were both cut pretty bad." ' "

■ The cross-examination does not in any respect change the statement above. It is sufficient to say that Williams' testimony, taken as a whole, fully justifies the conclusion, which must be indulged in favor of the judgment of the trial court, that Cherry came to his death as a result of injuries inflicted on him by Williams, while he (Williams) was acting in his own necessary self-defense in repelling an unlawful and unprovoked assault upon himself by Cherry.

The Industrial Accident Board awarded compensation to the widow and children of the deceased against the American Indemnity Company who furnished the insurance un-der the above-mentioned act. The Indemnity Company prosecuted appeal to the district court of Montgomery county, where the issues were properly joined between the parties. On final trial in the district court without the intervention of a jury, a judgment was entered for the Indemnity Company. On appeal to the Court of Civil Appeals by the minor children only (the widow did not appeal), the judgment of the district court was affirmed. 24 S.W.(2d) 549. The case is in the Supreme Court on writ of error granted on application of Cherry's children.

■■ The trial court filed no findings of fact or conclusions of law except a general finding that the facts presented no compensable case under the law. We must therefore view the evidence in the light most favorable to the judgment. When we so view the facts above detailed we must, as above shown, presume that H. L. Cherry came to his death as a result of injuries received in a fight which was brought about by his making a willful, unlawful, and unjustified assault on J. J. Williams, and while Williams was acting in his own necessary self-defense in repelling such assault. In other words, we are here confronted with the question as to whether, under the Compensation Act of 1913, a workman could provoke a difficulty, make an unlawful, willful, and unprovoked assault upon another, and then recover compensation for injuries which the other person justifiably inflicted on him while repelling such assault? We think a mere statement of the issue involved demonstrates that the case is noncompensable.

■ It is contended by the plaintiff in error that the 1913 act contained none of the exceptions set forth in paragraphs 1, 2, 3, and 4, subdivision 5, article 8309, R. C. S. 1925, and in this connection it is pointed out that paragraph 4 expressly provides that the term "injury" shall not include "an injury caused by the employee's willful intention and attempt * * * to unlawfully injure some other person. * * *" This is true, but the original act does require that the injury be sustained "in the course of his employment." The act does not require that such injury arise out of the employment. We are therefore here confronted with only one question, which is: Were the instant injuries received "in the course of his employment?" The phrase "in the course of his employment" used in the 1913 act, which contained none of the exceptions found in the present act, meant that the injury must (a) have arisen during or within the period of the employment; (b) it must have arisen at a place where the employee might reasonably have been; and (c) it must have arisen while he was reasonably fulfilling the duties of his employment. Corpus Juris Treatise, Work-

man's Compensation Acts, p. 8, par. 72; Brown et al. v. Bristol Last Block Co. et al., 94 Vt. 123, 108 A. 922.

■ An examination of the testimony of J. J. Williams, which was accepted as true by the trial court and Court of Civil Appeals, and which we must accept as true, discloses that H. L. Cherry came to his death at the place of his employment and during the period thereof. By during the period thereof we mean during the period that Cherry was properly at the place of employment, and while his employment required· his presence thereat. This leaves us to determine one question only, which is: Was H. L. Cherry, at the time he received his injuries, reasonably fulfilling the duties of his employment? Cherry's heirs contend that he was, within the meaning of the 1913 act, and in support of such contention cite the following authorities: Texas Employers' Liability Act 1913, c. 179, p. 429, General Laws 33d· Legislature, 1913; American Ind. Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949; Cox v. Kansas City Refining Co., 108 Kan. 320, 195 P. 863, 19 A. L. R. 90; Callihan v. Montgomery, 272 Pa. 56, 115 A. 889, 891; Brown et al. v. Bristol Last Block Co., 94 Vt. 123, 108 A. 922; Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 P. 398, 406; Taylor Coal Co. v. Industrial Commission, 301 Ill. 548, 134 N. E. 172.

We shall discuss each of the authorities above cited.

■ The Employers' Liability Act of 1913 only required that the injury be received in the course of the employment. It did not require that the injuries arise out of the employment, and it contained none of the exceptions contained in the present act. Cherry's heirs contend that the very fact that the Legislature enacted the 1913 act without the exception contained in paragraph 4, subdivision 5, article 8309, R. C. S. 1925, and later amended the act to include such exception, is a legislative interpretation that the exception was not intended to be included in the 1913 act. Even were we to admit this contention, it could not alter this case. An interpretation placed on the act of one Legislature by a subsequent Legislature, while persuasive, is not absolutely binding on a court. In the instant case we must hold that the term, "in the course of his employment," used in the 1913 act, was meant to be construed in the light of the well-recognized authorities of that time.

American Indemnity Company v. Dinkins, supra, is by the Court of Civil Appeals at Beaumont, the same court which decided the instant case. That case involved an injury received by an employee while riding on his own motorcycle on a public street or road entirely off the employer's premises and while the employee was returning to his own home after the day's work was done. Under such facts the court very correctly held that the case was noncompensable under the Act of 1917. (Acts 35th Leg. c. 103).

Corpus Juris Treatise, supra, which is a Corpus Juris Treatise of Workman's Compensation Acts in general, defines "in the course of his employment" in substance the same as we have above, but the same authority (paragraph 73, p. 82) says: "Where at the time of the injury the employee is engaged in a voluntary act not accepted by, or known to, his employer and outside the duties for which he is employed, the injury cannot be said to be in the course of the employment."

Cox v. Kansas City Refining Co., supra, which is by the Supreme Court of Kansas, shows that Cox was an employee of the refining company at the time he received his injuries. He was then a man about 49 years of age, and had been subject to epileptic fits since he was 21 or 22 years of age. While at work he was seized with one of these fits, and fell against some hot iron pipes and was severely injured. It was shown that the· work Cox was engaged in did not contribute in any way to bring about or intensify his physical condition. Under such a record, the Supreme Court of Kansas held that the injury did occur during the course of the employment, but did not arise out of such employment. We think this case is no authority for allowing compensation here, as it involves no issue of an employee voluntarily going outside the scope of his employment to commit an unlawful and unprovoked assault on a fellow employee.

Callahan v. Montgomery, supra, which is by the Supreme Court of Pennsylvania, shows that the court had before it a claim for compensation under a law which, like our 1913 act, did not require that the injury arise out of the employment, but did require that it occur in the course of the employment. The opinion also discloses that the act in defining what it meant by "an injury occurring in the course of the employment" provided: "All injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employee, who, though not so engaged (in the furtherance of· the business or affairs of the employer), is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of his employment."

In construing the above statutory definition the court said: "The provision just quoted is broad enough to include every injury received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there regardless of whether

his presence at the particular place where the injury occurred is actually required, *if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.*" (Italics ours.)

From what was said above it will be seen that the court expressly held that, where the facts showed a virtual abandonment of the course of employment by the injured person, or if at the time of the injury he was engaged in something wholly foreign to the employment, he was not in the course of his employment, even though he was on the premises of his employment during the hours thereof. To our minds, this case is authority against the contention of the plaintiffs in error in the instant case.

Brown v. Bristol Block Company, supra, which is by the Supreme Court of Vermont, shows that Brown, an employee of the Block Company, was employed with his two horses by such company. At the noon hour (we presume while Brown was resting), after Brown had eaten his dinner, the horses ran away. Brown tried to stop them, and was run over and killed. The injuries occurred on the premises of the employment and while Brown was performing the duties expected of him. Under the above record, the court held that the case was compensable, and that Brown was performing an act in the interest of his employer because the horses were hired by it, and the company was therefore materially interested in them. We see no comfort for claimants here in the Brown Case. The opinion in that case clearly indicates that, had the case presented facts showing that Brown was doing something wholly foreign to his employment, no compensation would have been allowed.

Western Indemnity Company v. Pillsbury, supra, which is by the Supreme Court of California, shows that the injury was received by the employee as "the result of a willful assault by another" while he was "undertaking to do something in the line of his duty." The facts of this case are fully set out in the opinion of the Court of Civil Appeals, and will not be repeated here. A careful reading of the opinion clearly discloses that, had the claimant gone outside of his employment to commit a willful or criminal assault on another, no compensation would have been allowed. We here quote the following very significant statement from the opinion:

"There remains the question whether, accepting as true the specific facts found, the commission erred as matter of law in holding and finding that those facts showed an injury by accident in the course of Rudder's employment. This question must be answered in the negative. The circumstances that the injury was the result of a willful or criminal assault by another does not exclude the possibility that the injury was caused by accident. 1 Bradbury on Compensation (2d Ed.) 505. In discussing the English Compensation Act, Lord Macnaghten said in Fenton v. Thorley & Co., Id. (1903) A. C. 443:

"'The expression "accident" is used, in the popular and ordinary sense of the word, as denoting an unlooked for mishap or an untoward event which is not expected or designed.'

"This court has defined 'accident' as:

"'A casualty—something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured.' Richards v. Travelers' Ins. Co., 89 Cal. 170, 26 P. 762, 23 Am. St. Rep. 455; Price v. Occidental Life Ins. Co., 169 Cal. 800, 147 P. 1175.

"Under these and other authorities, it is clear that an injury caused by the attack of a third person may be accidental so far as the injured person is concerned. On the other issue, whether the injury occurred in the course of the employment of Rudder, it must also be held that the finding of the commission was sustained by sufficient evidence. The question, simply stated, is whether the injury resulted from Rudder's undertaking to do something in the line of his duty, or whether it occurred as the result of his going outside the scope of his employment and entering upon a private quarrel for reasons of his own. The facts found justify the inference that Rudder was hurt in an altercation which grew out of his justifiable efforts to maintain his authority as foreman and to protect the property of his employer intrusted to his care. There is no occasion to elaborate the discussion on this point. In its last analysis the petitioner's argument rests upon a supposed state of facts which was not established to the satisfaction of the commission, and which was not shown by evidence free from conflict."

Taylor Coal Co. v. Industrial Commission, supra, which is by the Supreme Court of Illinois, shows that the claimant was acting as a top foreman of a coal company. While claimant was on the premises going to the office to eat his lunch, he met one Sweet, also an employee of the coal company. A dispute arose between them as to a penalty on docking that had been imposed by claimant on Sweet. The discussion was followed by a fight. The evidence was very conflicting as to who was the aggressor. Under the testimony of claimant, he struck Sweet because he thought he had a gun and was fearful he was going to be shot, and struck him for that reason only, and then ran, and was shot by Sweet after he had turned and was running hurriedly towards the office. Under these facts, the commission allowed compensation, and the action was affirmed by the trial court.

On appeal, the Supreme Court affirmed the lower court. Certainly this is not a case where it must have been presumed in favor of the judgment of the trial court that the injured employee had turned aside from the duties of his employment to commit an unlawful and willful assault on a fellow employee.

In Swift & Company v. Industrial Commission, 287 Ill. 564, 122 N. E. 796, 799, which is also by the Supreme Court of Illinois, and which case is cited with approval in the opinion in the Taylor Coal Company Case, supra, it is shown that the injuries were received in a fight between the claimant and another employee, the fight arising over matters concerning the employment. The facts were very conflicting as to who was the aggressor. There was evidence tending to show that the claimant was not. The Industrial Board and the trial court both allowed compensation, and this judgment was affirmed. In the course of the opinion, the court used the following very significant language: "While the case, upon the facts and application of the law, is close, we hold that there is sufficient competent evidence in the record to justify the conclusion of the Industrial Board, and that therefore the courts are bound by that finding."

In the McNicol Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, which is by the Supreme Court of Massachusetts, speaking through Chief Justice Rugg, one of the greatest of American jurists, it is shown that the employee, while engaged in the discharge of his duties, was injured and died as a result of blows or kicks administered to him by a dangerous and drunken fellow workman. No issue of the injured employee having voluntarily turned aside from the duties of his employment to commit an unlawful or willful assault on another was involved. Judge Rugg held the injury arose out of, and was received in the course of, the employment. In the opinion the term "in the course of" is very simply, but very comprehensively, defined as follows: "It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform." (Italics ours.)

The Heitz Case, 218 N. Y. 148, 112 N. E. 750, L. R. A. 1917A, 344, is by the Court of Appeals of New York, the court of last resort of that state. The opinion shows the following facts: "The facts are as follows: Claimant on July 14, 1914, was employed as a driver by Jacob Ruppert, Incorporated, which was engaged in the business of carrying on a brewery. He brought his horses into the stable, where Guth, a fellow workman, and he unharnessed the horses and proceeded to wash them off with the hose. Claimant told Guth he was using too much water on the horses, and Guth then intentionally sprinkled some water on claimant. Shortly after claimant, having briefly left the place where the horses were being washed, was returning to his work of cleaning the horses, when he met Guth. As they passed claimant touched Guth on the shoulder saying: 'George, don't do that again.' Guth slapped claimant on the shoulder, and as claimant turned around Guth's finger stuck in claimant's left eye, causing injuries by reason of which it was necessary to remove the eye."

Under the above facts, the commission awarded compensation, and this award was affirmed by the Appellate Division.[1] On appeal to the Court of Appeals, that court held that under the law of New York the decision of the commission was final on disputed issues of fact, and that the facts were sufficient to show accidental injury, and thus a case compensable under a law that required the injury to arise out of and in the course of the employment.

██ We have discussed rather extensively the authorities cited by plaintiffs in error in the petition for the writ. We think that none of them sustain the proposition that an employee is injured in the course of his employment when he turns aside therefrom to commit an unlawful and unjustified assault on another, and as a consequence and reasonably to be expected result thereof receives injuries, which are inflicted on him while the person assaulted is acting in his own necessary self-defense. We think further that, when one person unlawfully assaults another, he should expect the person assaulted to do the thing which the laws of nature and of the country give him the right to do, that is, to defend himself, and injuries so inflicted by the person wrongfully attacked on the attacker are not accidental injuries, but injuries invited and to be expected.

We have read and carefully considered all assignments contained in the application for the writ, and in our opinion none of them present error.

We recommend that the judgments of the Court of Civil Appeals and district court be both affirmed.

CURETON, C. J.

Judgments of the Court of Civil Appeals and District Court are both affirmed, as recommended by the Commission of Appeals.

[1] 171 App. Div. 961, 155 N. Y. S. 1112.