

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 23, 1957

Hon. Raymond W. Vowell                    Opinion No. WW-252
Acting Executive Director
Board for Texas State Hospitals    RE:  Validity of Appro-
  and Special Schools                    priations to pay the
Box S, Capitol Station                   salaries of the Super-
Austin, Texas                            intendent and the
                                         Business Manager of
                                         the Austin State
Dear Mr. Vowell:                         School Farm Colony.

        You have requested an opinion as to the legality
of the payment of salaries to the "Superintendent" and to
the "Business Manager" of the Austin State School Farm
Colony as is provided in the Appropriation Act passed by
the 55th Legislature.

        In other words, you desire to know whether these
salaries may be lawfully paid to the named "Superintendent"
and "Business Manager" of the Austin State School Farm
Colony.

        Our answer to both questions is in the affirmative.
We advise that the salary of a Superintendent and the
salary of a Business Manager for the Austin State School
Farm Colony may legally be paid from the funds appropria-
ted for that purpose by the Texas Legislature, Regular
Session of 1957, Chapter 385, pages 892, 893.

        The Acts of the Regular Session of the 51st Legis-
lature, Chapter 157, pages 324, 325, and Chapter 316,
pages 588, 589, 590, 591, made and constituted the Aus-
tin State School Farm Colony (which already was the pro-
perty of and belonged to the State of Texas) one of the
institutions which became a unit of the "Texas State Hos-
pitals and Special Schools," created by said Acts. Said
Acts provided for the general government of said "Texas
State Hospitals and Special Schools" by a Board, and this
Board was authorized by the Legislature to employ an
"Executive Director and such other personnel necessary
to carry out the provisions of this Act." The provisions
of the Act set out at length the duties, powers, and
responsibilities of the Superintendent (see Article 3174B,
Section 10, and Articles 3175, 3176, 3177 and 3178, Ver-
non's Civil Statutes). Inasmuch as "the provisions of

the Act," regarding "Superintendents" and their duties obviously could not be carried out without there being Superintendents, the Act necessarily authorized the employment of Superintendents.  Article 3174B, Vernon's Civil Statutes, specifically provides that "the Superintendent of any institution named herein" (and Austin State School Farm Colony was one of the institutions specifically so named) "with the approval of the Executive Director may appoint a Business Manager."

From the foregoing it is seen that the Texas State School Farm Colony is one of the units composing the Texas State Hospitals and Special Schools, so created and named by the legislative act, and that it may, as such, have a Superintendent and a Business Manager.  Such is our interpretation of the applicable statutes.

The same 51st Legislature which passed the Acts creating the Austin State School Farm Colony as an institution which was a unit of the aggregation of institutions constituting the Texas State Hospitals and Special Schools, itself construed the mentioned laws as we have here construed such laws.  The said 51st Legislature, in the General Appropriation Act of 1949, enacted at the same session of the Legislature which fixed the legal status of the Austin State School Farm Colony as above indicated, provided a total of $288,000 for the operation of said Austin State School Farm Colony as an integral part of the Texas State Hospitals and Special Schools, for the year ending August 31, 1950.  This Appropriation Act significantly provided $5,004.00 for the salary of a "Superintendent" and $3,600.00 for a "Business Manager" (see Acts of 51st Legislature, Chapter 553, page 1073.)

Inasmuch as the same Legislature which made the Austin State School Farm Colony a unit of the Texas State Hospitals and Special Schools enacted this appropriation bill for its support and in the Bill provided for the payment of a salary to the Superintendent and a salary to the Business Manager, this is in substance and effect a construction of the legislative acts herein mentioned by the Legislature which enacted them and said construction is the same as the one made by us above.

It has been held by the Texas courts that a construction of a legislative act or acts, when made by the same Legislature in another act, has great weight if not controlling effect, because it plainly shows the legislative intent in the passage of the act under consideration,  First National Bank v. City of Port Arthur, ( Civil Appeals ) 35 S. W. 2d 258 (holding that a

contemporaneous and practical construction by the Legislature is presumptively correct); Houston Oil Company v. Griggs, (Civil Appeals) 181 S.W. 833, (affirmed, Commission of Appeals) 213 S.W. 261.

In the case of Stephens County v. Hefner, 16 S.W. 2d 804, it was held by the Commission of Appeals of Texas as follows:

> "(3) Legislative interpretation of an Act is entitled to be given weight, and where it is an interpretation made by the very Legislature which passed the Act in question, it should be of controlling effect. Slaughter v. Yoakum County, 109 Tex. 42, 195 S.W. 1129; State v. Houston Oil Company (Tex. Civ. App.) 194 S.W. 422; Stockdale v. Atlantic Insurance Co., 20 Wall. 323, 22 L.Ed. 348, Fed. case No. 13462; Murdock v. Memphis, 20 Wall. 590, 22 L.Ed. 429; U.S. v. Claflin, 97 U.S. 546, 24 L.Ed. 1082."

Each regular session of the Legislature which has convened since the passage of the Acts of 1949 and since the interpretation of these Acts by the 51st Legislature which enacted them, has made the same interpretation of these acts as was made by the Legislature of 1941 and as is made by us in this opinion.

The regular session of the 52nd Legislature, in 1951, made a total appropriation of $304,042.00 for the operation of the Austin State School Farm Colony for the year ending August 31, 1952, and $280,000.00 for the year ending August 31, 1953. In this appropriation bill there was provided for the Superintendent a salary of $5,244.00 for each of the two years and there was also provided a salary of $3,840.00 for the Business Manager for the same period of time (Ch. 499, p.1259, Acts 52nd Reg. Ses.).

The Appropriation Act of the 53rd Legislature of 1953 appropriated for the Austin State School Farm Colony, for the year ending August 31, 1954, the sum of $296,512.00 and for the year ending August 31, 1955, the sum of $293,777.00. This appropriation contained provisions for the salaries of both the "Superintendent" and the "Business Manager" (see Acts, 53rd R.S., ch. 81, p. 142).

Referring to the Acts of the 54th Regular Session, we find that in ch. 519, pages 1368, 1369, $700,578.00

was provided for the Austin State School Farm Colony for the year ending August 31, 1956, and $873,578.00 was provided for the year ending August 31, 1957.  Items for the salaries of both "Superintendent" and "Business Manager" were included.

The last Legislature (55th, R.S., ch. 385, pp. 892, 893) appropriated for the Austin State School Farm Colony, for the year ending August 31, 1958, the sum of $1,215,298.00 and for the year ending August 31, 1959, the sum of $1,213,287.00.  This Act also provided for the salaries of both "Superintendent" and "Business Manager."

It is thus apparent that each subsequent Legislature has construed the mentioned Acts of 51st Legislature of 1949 as said Acts had been construed by the Legislature which enacted them.  While it has been held that an interpretation contained in an Act passed at a subsequent Legislature is not controlling, /Coleman Gas and Oil v. Santa Anna Gas Co., (Comm. App.) 67 S.W. 2d 241; Cherry v. Magnolia Petroleum Co., (Comm. App.) 45 S.W.2d 555) such interpretation may be very significant and entitled to substantial weight.  Texas-Louisiana Power Co. v. City of Farmersville, (Comm. App.) 667 S.W. 2d 235; Tillery v. Town of McLean, (Civ. App.) 46 S.W. 2d 1028; Berry v. County Board of School Trustees (Civ. App.) 42 S.W.2d 121/  In Neff v. Elgin, (Civ. App.) 270 S.W. 873, (error ref.) it was held that the construction of a law by successive Legislatures for many years should have great weight.

In Cannon's Administrator v. Vaughan, 12 Tex. 399, it was held that "If it can be gathered from a subsequent statute, in pari materia, what meaning the Legislature attached to the words of a former statute, this will amount to a Legislative declaration of its meaning, and will govern the construction of the first statute."  To like effect was the holding of the Civil Appeals Court in the case of Silurian Oil Co. v. White, 252 S.W. 569, error ref.

From the foregoing it is evident that the legislation which made the Austin State School Farm Colony an institution in that group of institutions which comprise the Texas State Hospitals and Special Schools, has been uniformly construed by the Legislature which enacted it and by each Legislature which has convened since that time as authorizing the employment and payment of a superintendent and a business manager for said

Austin State School Farm Colony.

We do not consider the foregoing mentioned act of
1949 as being ambiguous. We think it clearly constitu-
ted the Austin State School Farm Colony an integral,
individual unit of the newly created State Hospitals
and Special Schools.

But if the language of said act should be
esteemed to be ambiguous, then we examine the facts of
the operation of the Austin State School Farm Colony
since the enactment of 1949. On such examination, we
find that ever since the effective date of said Act the
construction of same by those officers charged with its
administration has been that the status of the Austin
State School Farm Colony has been the same as stated by
us in this opinion. The Board for Texas State Hospitals
and Special Schools, the Executive Director of said
Board, the Comptroller, the State Treasurer, in their
official acts pertaining to said Austin State School
Farm Colony have all recognized that it is one of the
units comprising the Texas State Hospital and Special
Schools, being an individual entity thereof. Uniformly
a superintendent has been duly employed and also a busi-
ness manager has been duly employed. Contracts of
employment have been entered into by and between said
entity and various employees. The statutory duties
imposed upon the Superintendent and upon the Business
Manager, respectively, have been duly discharged by
them. The Superintendent and the Business Manager
have been paid salaries out of the appropriations made
by successive Legislatures for that specific purpose.

It has been held by the Texas courts that sound
public policy requires the resolving of all doubts in
favor of a contemporaneous or practical construction that
has been followed with substantial uniformity. (Moorman
v. Terrell, 109 Tex. 173, 202 S.W. 727; Tolleson v. Rogan,
96 Tex. 424, 432, 73 S.W. 520, 524; Manhattan Life Insu-
rance Co. v. Wilson Motor Co. /Civ. App./ 75 S.W.2d 721,
err. ref.; City of Dallas v. Texas Employers' Insurance
Association /Civ. App./ 265 S.W. 1113; State v. Houston
and T. C. Railroad Co. /Civ. App./ 209 S.W. 820).

The Texas courts have also held that they will
adopt and uphold the construction based upon a statute
by a department of the State government or by an executive
officer of that office charged with its administration,
if the statute is ambiguous. (Koy v. Schneider, 110 Tex.
369, 221 S.W. 880, denying rehearing 218 S.W. 479; State

v. Houston Oil Co. /Civ. App./ 194 S.W. 422, err. ref.; Brown v. City of Amarillo /Civ. App./ 180 S.W. 654, err. ref.)  It has been held that this statement is particularly true if such construction is reasonable.  (City of Tyler v. Texas Employers' Insurance Association /Comm. App./ 288 S.W. 409, reversing 283 S.W. 929, rehearing denied /Comm. App./ 294 S.W. 195; Frank Co. v. Latham, /Civ. App. 1945/ 190 S.W.2d 739, affirmed /1946/ 145 Tex. 30, 193 S.W.2d 671). This rule is held to be "particularly applicable to an administrative construction of long standing where valuable rights have been acquired."  (Slaughter v. Yoakum County, 109 Tex. 42, 195 S.W. 1129; State v. Houston Oil Co. /Civ. App./ 194 S.W. 422, err. ref.)  The same holding has been made where contracts have been entered into under such construction of the ambiguous statute.  (State v. Texas Mutual Life Insurance Co. /Civ. App./ 51 S.W.2d 405, reversed on other points 58 S.W.2d 37).  In Calvert v. Fisher (Civ. App. 1953) 259 S.W.2d 944 rehearing denied, it was held that a longstanding departmental construction of the statute is entitled to great weight in the courts and in the case of Associated  Independent Corporation v. Oil Well Drilling Co. (Civ. App. 1953) 258 S.W. 2d 523, rehearing denied, affirmed 1954 in 264 S.W.2d 697, rehearing denied, it was held that courts are inclined to accept an administrative agency interpretation of a statute which has been accepted without challenge over a long period of time.  It was also held in the case of Union Terminal Co. v. Muldrow (Civ. App. 1955) 279 S.W.2d 164, rehearing denied, that a departmental construction of a statute extending over a long period of time is entitled to great weight.

Hence, it follows that if the mentioned legislative act of 1949 should be ambiguous (and we do not esteem it so), we would, by reason of these departmental constructions of it, which are reasonable, and by virtue of which construction rights have accrued and contracts have been made, reach the same conclusion as to the validity of the payments of the salaries of the mentioned superintendent and business manager that we have heretofore stated herein.

Any Attorney General's Opinions which may have held contrary to the holdings of this opinion, are hereby over-ruled and withdrawn.

## SUMMARY

The salary of a superintendent and the salary of a business manager for the

Austin State School Farm Colony may legally be paid from the funds appropriated for that purpose by the regular session of the Texas Legislature of 1957, in Ch. 385, pp. 892, 893.  Any Attorney General's Opinions which may have held contrary to the holdings of this opinion, are overruled and withdrawn.

Very truly yours,

WILL WILSON
Attorney General of Texas

By: W. V. Geppert

and George P. Blackburn
Assistants

GPB:dmp

APPROVED:

OPINION COMMITTEE:

J. C. Davis, Jr.
E. M. DeGeurin
Byron Fullerton

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    James N. Ludlum