No. 23,063.

LEROY BLACKBURN, *Appellee,* v. THE COFFEYVILLE VITRIFIED BRICK & TILE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injury Arose "in Course of Plaintiff's Employment."* The evidence in a workmen's compensation case is considered and held sufficient to sustain a finding that a disease from which the plaintiff suffers was the result of an injury arising out of and in the course of his employment.

2. SAME—*Existing Disease Aggravated by Accident to Workman—Compensation for Resulting Injury.* Following *Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801, and *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793, it is held that if by weakening resistance or otherwise an accident so contributes to or influences the progress of an existing disease as to cause a disability, it is sufficient to justify an award under the workmen's compensation act.

3. SAME—*Aggravation of Existing Disease—Findings—Instructions.* In a workman's compensation case there was evidence to sustain a finding that the plaintiff's injury contributed to and aggravated the disease of multiple sclerosis from which it is conceded he suffered. The jury found that the plaintiff's injury had precipitated or contributed to the development of his present condition and also that it was fully responsible for that condition. *Held,* that any inconsistency in these findings is explained by an error (not complained of by either party) in the giving of an instruction which charged that the plaintiff was not entitled to recover for an aggravation of a disease he may have had prior to receiving the injury; and further *held,* that the error should be disregarded and the general findings and judgment upheld.

4. SAME—*Petition—No Material Variance Between Pleading and Proof.*
Ordinarily the issues in a compensation case are simple and, except
for certain facts which the statute makes essential, the pleadings are
of little importance. Where the petition charges incapacity resulting
from an accident, the employer may not unreasonably be expected to
meet evidence showing that as a result of the accident a disease from
which the plaintiff already suffered was aggravated, causing partial
or total incapacity.

Appeal from Montgomery district court; JOSEPH W. HOL-
DREN, judge. Opinion filed November 6, 1920. Affirmed.

*W. E. Ziegler, A. M. Etchen,* both of Coffeyville, and *F. S.
Jackson,* of Topeka, for the appellant.

*Charles D. Ise,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The principal question to be determined by de-
fendant's appeal is whether in an action under the workmen's
compensation act the judgment is sustained by evidence which
established the fact that a disease from which the plaintiff
suffers was caused by an injury arising out of and in the course
of his employment.

At the time of his injury, plaintiff was a young man 19 years
of age. His evidence tended to show that previous to the in-
jury he was an able-bodied man who had been working as a
common laborer for about two years at construction work,
pouring concrete, hauling pipe, and digging ditches, and that
he had shown no indications of the disease from which he now
suffers. While attempting to start a gas engine, his foot was
caught in the crank case, lacerating his foot, and in attempting
to release himself he fell backward into a box of trash and
pieces of old iron; that he lay there in a faint from a half to
three-quarters of an hour, and when he got up he could not
stand on his left foot; that shortly after his injury he felt a
severe pain in his neck and back; that he had fits of shaking
and trembling, and lost the use of his limbs so that he walked
with crutches. At the trial, which occurred about two years
after his injuries, it was conceded that he was suffering with
multiple sclerosis which, according to the medical testimony, is
a hardening of many areas of the brain and spinal cord which

have become infected by some organism or poison that causes a deadening of the cells from which they never recover for the reason that they have no blood vessels to nourish them. It seems to be conceded that multiple sclerosis is due to a reaction of nerve centers to infection. When the nerve center hardens or becomes destroyed it fails to function; that is, to carry along the impulses from the brain. The authorities agree that there are various causes which produce the disease; some state that acute infection may cause it or that it may come from measles, scarlet fever, smallpox, whooping cough and other infectious diseases. Heredity is given as one of the most frequent causes, and many of the authorities mention traumatic injuries, although some of the modern ones do not refer to that as a cause. The testimony of the physicians was based upon knowledge gained by consulting authorities, rather than from personal acquaintance with the disease. The principal conflict in the testimony of the physicians called by the plaintiff, and those who testified for the defendant arose over the question whether multiple sclerosis could develop from a traumatic injury immediately after such injury. One physician who testified for the defendant gave his opinion that plaintiff's injury was absolutely independent of and had nothing to do with the disease. He thought that anything that would excite a patient who had the disease in the earlier stages would exaggerate the symptoms, but would not of itself cause the disease to become permanently worse. Another physician who testified for the defendant gave infection as the cause of multiple sclerosis, and, in his opinion, no injury would produce the disease; it was due to bacterial infection, and in multiple sclerosis it would take from three to fourteen years, in his judgment, before the symptoms were developed. He did not think it could occur in less than a couple of years. It was his opinion that the plaintiff "will not recover from the disease." On cross-examination he said it was possible that the injury to the plaintiff brought on the nervousness and jerking sooner than it would otherwise have developed.

Dr. Baird, a regularly practicing physician, who had known the plaintiff's family five or six years, and had treated him for multiple sclerosis, was a witness for the plaintiff. He named acute infections, scarlet fever, measles and other infectious diseases as recognized causes of multiple sclerosis, and stated

that the authorities he had consulted give traumatic injuries as one, but indicate that in fifty per cent of the cases it was impossible to determine the cause; that heredity was a frequent cause, and that there had been instances where there had been as many as six or seven members of the same family suffering with the disease. To a hypothetical question, asked for the purpose of getting his opinion upon whether the disease from which the plaintiff suffers could have been caused by his injury, he answered, "I would say that it was contributory." He explained his answer to mean that this disease might have been latent in the system prior to the injury, in which case "the injury may have been the last straw that caused the disease to blaze up at that time," but the witness could not say that it was absolutely the cause of it, for the reason that if the disease were present in the system, it was only a question of time until it would assert itself.

In their findings the jury said that the plaintiff was totally incapacitated for work as a result of an injury received by him in the course of his employment, and that this total incapacity continued and will continue for life; that plaintiff was not afflicted with the disease of multiple sclerosis at or prior to the time of his injury. They also found that his injury did precipitate or contribute to the development of his present condition and that it was "fully responsible" therefor. The amount of compensation awarded him was $4,513.11.

The principal contention is that there was no testimony to sustain the findings and judgment. It is insisted that the strongest testimony any witness gave was that the disease might have been caused by the injury or that the injury might have aggravated it. We have already quoted testimony of Dr. Baird, who gave his opinion that the injury was contributory, although he would not say that it was absolutely the cause of it, and the admission of a physician called by the defendant that in his opinion it was possible that the injury brought on the nervousness and jerking sooner than it would otherwise have developed. In addition, Dr. Fite gave his opinion that the plaintiff's condition was due to an injury or shock which undoubtedly aggravated and may have been the absolute cause of the disease. We think there was sufficient evidence to sustain the finding.

While there is no complaint by either side with respect to instructions, it appears that the court instructed the jury that plaintiff could not recover for an aggravation of any disease he may have had prior to receiving the injury.   The instruction was erroneous but was favorable to the defendant.   (See *Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801, and the authorities cited in the opinion, including the following:

" 'The courts very generally hold that if an existing disease is aggravated by accident or injury, compensation must be paid for the resulting injury.' [Note, L. R. A. 1917 D, 105; see, also, *id.* pp. 129, 130.]"   p. 212.)

It was ruled in the syllabus of the Battelle case as follows:

"The evidence in an action under the compensation statute held to support a finding that the plaintiff was injured on the premises where he was employed, by having to wade through flood water which had overflowed the defendant's car works; an old wound on his foot being thereby infected, requiring an amputation." (¶ 3.)

In *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793, it was said in the opinion:

"The defendant insists that the workman died of disease; that is, the injury did not arise out of the employment.   The question was one of fact, and should have been submitted to the jury.   It is not material that the workman's blood vessels were weakened by disease, or that he was predisposed to hemorrhage because, for example, he had breathed the dust of the sacking department for three years.   The statute establishes no standard of health for workmen, entitling them or their dependents to compensation, and if the added factor of physical exertion in the employment were required to effect the lesion, and did so, the injury arose out of the employment."   (p. 778.)

To the same effect, see *Peoria Terminal Co. v. Indus. Board,* 279 Ill. 352, where it was said in the opinion:

"Even where a workman dies from a preëxisting disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident." (p. 356.)

Also see *Hart v. Hartford Faience Co.,* 90 Conn. 539, where it was held that—

"Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it." (p. 543.)

It has been held that "if by weakening resistance or otherwise an accident so influences the progress of an existing dis-

ease as to cause death or disability" it is sufficient to justify an award under the workmen's compensation act. (*Mailman's Case,* 118 Me. 172.)

In *Madden's Case,* 222 Mass. 487, a workman "with an already impaired heart suffered further injury therein through the muscular exertion" required by her work, and it was held that she could recover compensation not only for that part of the injury resulting directly from the work, but for that following directly from the previous defective condition of her heart.

Some cases are cited to the contrary in the defendant's brief. Others cited ·go no further than to hold that a disease which arises in the course of employment, with nothing more, is not within the act; that is, it must result from an injury; there must be an accident arising out of and in the course of the employment.

It is true that under our compensation laws a workman may not recover compensation for an incapacity resulting merely from a disease, although the disease developed in and was caused by the nature and conditions of his employment. It is only where he has sustained some accidental injury, arising out of and in the course of his employment, which aggravates a disease and thereby causes incapacity, that he may recover compensation. This distinction is recognized in the cases cited, *supra,* and in some of those cited in defendant's brief.

It is probable that the erroneous instruction led to what seems an inconsistency in the findings. The jury had heard the conflicting opinions of the expert witnesses with respect to the possibility of this disease developing immediately after such an injury; they were instructed that the plaintiff could not recover for an aggravation of a disease he may have had prior to receiving his injury. In attempting to steer between the two theories they gave an affirmative answer to the question whether plaintiff's injury did "precipitate or contribute" to the development of his present condition. To another question, "To what extent did such injury contribute to the development of the plaintiff's condition?" they answered, "Fully responsible." The record is silent upon the matter, but presumably instruction No. 5, to the effect that plaintiff could not recover for an aggravation of a disease he may have had prior to

his injury, was given at the request of the defendant. As we have seen, it was wrong, and moreover, prejudicial to plaintiff's case. It can hardly be said in view of all the circumstances that there is any substantial inconsistency in the findings such, at least, as would warrant the ordering of another trial. The facts seem to have been quite fully developed. The character of plaintiff's disease is conceded; the extent of his incapacity is not controverted, although the defendant, upon a mistaken theory, claims that it should not be held liable for compensation for total incapacity. The conflict in the evidence over the question whether the injury aggravated a latent disease of the plaintiff has been resolved against the defendant; and the finding that the injury was "fully responsible" for plaintiff's present condition may be regarded as a correct statement of a legal principle properly applied in compensation cases, rather than a statement of a fact to be established by evidence.

We find nothing substantial in the complaint that defendant was prejudiced because the petition charged generally that the incapacity resulted from the injury and because the petition made no claim that the injury aggravated a preëxisting disease. In the ordinary compensation case the issues are intended to be simple, and except for certain facts which the statute makes essential, the pleadings are of little importance. Where the petition charges incapacity resulting from an accident, the employer may not unreasonably be expected to meet evidence showing that as a result of the accident a disease, from which the plaintiff already suffered, was aggravated, causing partial or total incapacity for work. Probably at the time the petition in this case was drawn, neither the plaintiff nor his attorneys knew of such a disease as multiple sclerosis.

We discover no error in the record and the judgment is affirmed.