No. 22,942.

W. C. Cox, *Appellee*, v. The Kansas City Refining Company, *Appellant*.

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Workman Afflicted with Epileptic Fits—Injured by Falling—Accident Did Not Arise Out of His Employment.* A workman who had long been afflicted with periodical recurrences of epilepsy was seized with an epileptic fit in the course of his employment in a refining plant, but such epileptic fit was not traceable to his work nor did his employment contribute in any measure toward bringing on such affliction. During his epileptic seizure the workman became unconscious and fell against some hot pipes and severely injured his back. *Held*, that the accident and consequent injury did not arise out of his employment but out of his affliction, and compensation for his injuries cannot be awarded against his employer.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 12, 1921. Reversed.

*A. L. Berger,* of Kansas City, and *J. W. Rogers,* of Kansas City, Mo., for the appellant.

*David F. Carson,* and *W. J. McCarty,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for compensation for an injury sustained by plaintiff while in the defendant's employment.

Judgment was entered for plaintiff, and the principal contention in this appeal is whether the injury sustained by plaintiff was a "personal injury by accident arising out of and in the course of employment," within the terms of the workmen's compensation act. (Laws 1917, ch. 226, § 27.)

The plaintiff testified that he was a common laborer, 49 years old, and that he was subject to epileptic fits, and had been afflicted with such fits about once a month ever since he was 21 or 22 years of age. He had been employed at the defendant's refinery for a few weeks. During that time on one

occasion he had been put at work on top of a building, but owing to his affliction he knew it was dangerous work for him, and he decided to quit.

"I came down off that building at noon, and went to Mr. Taylor and I says, 'You give me my time, and I will quit and not get hurt,' I says, 'I won't work in these dangerous places; I won't risk it.' He says, 'I can't let you go, Cox, I have got to keep you here; I need the labor too bad, and I am going to keep you.' I told him why I was going to quit, I said, 'I have epileptic spells, and if I work in these dangerous places, I am going to quit. I want my money, and I will go home.' I went home that evening, he did not give me my money, if he had, I would have gone home; he did not send me back up on that building again; he put me to work right in the yard, outside the inclosure; shoveling concrete and such as that, monkeying around on the ground, just like he said."

Some days later while plaintiff was digging a trench in the ground, he desired to get a drink of water. The water was about 125 or 150 feet away. When he left the ditch to go for the water, his periodical epilepsy overtook him, his mind left him as he said it always did at such times, and when his senses returned he was about 75 feet away from where he had been at work. He had fallen against some hot pipes which came out of a building and ran down into the ground near the path towards which the drinking water was located. The hot pipes severely and permanently injured his back.

"Q. Now, on the day you were hurt, you was working in the ditches there? A. Yes, sir. They had a water boy there, but he wasn't around where we was. He would come around there and bring us water. We couldn't call him. He wasn't there when I wanted a drink. It was just like I would say to myself, 'I want a drink of water'—and that is the last I remember. I started off by myself to get a drink of water, and when I went a little distance, I got dizzy and lost my mind. Had one of those spells while walking along, and while I had one of those spells I lost my head.

"Q. And while in that condition you then fell, didn't you? A. Yes, sir.

"Q. And your fall was on account of your epileptic spells? A. Sure."

.    .    .    .    .    .    .    .    .    .

"Q. So you started off by yourself to get a drink of water, and when you went a little distance, you got dizzy? A. Lost my mind.

"Q. And had one of those spells. That is the first thing you remember, while you was walking along? A. Yes, sir.

Cox v. Refining Co.

"Q. And while you had one of those spells, you, of course, lost your head? A. Yes, sir."

. . . . . . . . . . . . .

"Q. You didn't fall over anything—that is, you didn't slip on anything and fall, but you fell on account of your epileptic spells? A. Sure; overbalanced.

"Q. Overbalanced by virtue of your epilepsy? A. Yes, sir.

"Q. And you happened to fall on some hot pipes that are not in the ground? A. Yes; there is four of them. . . .

"These spells last sometimes about three-quarters of an hour, and sometimes two hours; according to how hard they are."

Under the facts and circumstances thus narrated by the plaintiff himself, can it be said that the injuries sustained by him arose out of and in the course of his employment? "In the course of"—yes. If he had died of heart failure, or had been stunned by lightning, assaulted by a drunken stranger, or shot by a maniac, while at work, such mishap would have arisen in the course of his employment. "In the course of his employment," as a phrase, simply means that it happened while he was at work in his employer's service. The phrase relates to the time, place, and circumstances under which the accident occurred. But it is not sufficient to impose liability upon the injured workman's employer that the injury arose in the course of the employment. There is another and more important prerequisite. The injury must also arise out of the employment. It must arise because of it, or in some reasonable way be traceable to it. The injury must in some sense be due to the employment. The philosophy on which the workmen's compensation act is founded is that the wear and tear of human beings in modern industry should be charged to the industry just as the wear and tear of machinery has always been charged. And while such compensation is primarily chargeable to the industry and consequently to the employer or owner of the industry, eventually it becomes a part of the fair money cost of the industrial product, and to be paid for by the general public patronizing such product.

In *McRoberts v. Zinc Co.,* 93 Kan. 364, 366, 144 Pac. 247, it was said:

"In the enactment of the compensation law the legislature recognized that the common-law remedies for injuries sustained in certain hazardous industries were inadequate, unscientific and unjust, and therefore a sub-

Cox v. Refining Co.

stitute was provided by which a more equitable adjustment of such loss could be made under a system which was intended largely to eliminate controversies and litigation and place the burden of accidental injuries incident to such employments upon the industries themselves, or rather upon the consumers of the products of such industries."

"There is no doubt that it was the legislative intent to compensate workmen for injuries resulting from industrial accidents, and that such compensation is charged against the industry because [with or without fault] it is responsible for the injury." (*Klawinski v. Lake Shore, etc., R. Co.*, 185 Mich. 643, 645-6; L. R. A. 1916 A, 342, 343.)

(*Industrial Commission v. Ætna Co.*, 64 Colo. 480, 3 A. L. R. 1336, 1339.)

But in order to charge the industry with compensation for the workman's injury, such injury must in some sense, in some degree, be due to the workman's employment in the industry.

In discussing the phrase "out of the employment," in McNicol's Case, 215 Mass. 497, 499, L. R. A. 1916 A, 306, 307, it was said:

"It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. . . . But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In *Coronada Beach Co. v. Pillsbury*, 172 Cal. 682, it was said:

"The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work, or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment. It 'arises out of' the occupation where there is a causal connection between the conditions under which the servant works and the resulting injury. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." (Syl. ¶ 4.)

But how can this plaintiff's misfortune be charged against the industry in which he was employed? How can it be said that his injury arose out of his employment? The injury to his back was occasioned by his epileptic fit. It was the unfortunate effect of it, and not of his work. His fit was not provoked or induced or rendered more likely to happen because of his work. He was subject to such fits. For over twenty-five years he had been thus afflicted, with almost monthly regularity. We have had to consider a case, *Madey v. Swift & Co.*, 101 Kan. 771, 168 Pac. 1105, where a workman, while standing on a wet and slippery platform in a packing house, in the course of his employment, fell backwards, and received injuries from which he died. There was some evidence tending to show that the workman fell while in an epileptic fit and that his death was caused by epilepsy. But in that case there was the question of fact—whether he fell because of the slippery platform, which would be an accident arising out of his employment, or by reason of the epileptic fit, which would not be such an accident.

Cases there are too, many of them, where workmen by reason of constitutional infirmities are predisposed to sustain injuries while engaged in their labor, yet the leniency and humanity of the law permit them to recover if the employment itself contributes in some degree to bring about or intensify the physical condition which renders them susceptible to such accident and consequent injury. But in all such cases the employment must have some definite, discernible relation to the accident. Thus, in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, a workman whose labors in the dust of a cement mill for three years had impaired his lungs and who had not fully recovered from typhoid fever, miscalculated his strength while swinging a heavy sledge to break rock in a quarry, and suffered a pulmonary hemorrhage from which he died. It was held that notwithstanding his physical weakness predisposing him to such fatality, his employment was a contributing cause of the accident—that it arose out of his employment, and his dependents were permitted to recover compensation for his death. The court cited pertinent and instructive English cases, and concluded:

"It is not material that the workman's blood vessels were weakened by disease, or that he was predisposed to hemorrhage because, for example, he had breathed the dust of the sacking department for three years. The statute establishes no standard of health for workmen, entitling them or their dependents to compensation, and if the added factor of physical exertion in the employment were required to effect the lesion, and did so, the injury arose out of the employment. That the injury occurred in that way, and is referable to a definite time, place, and circumstances, is indicated by the workman's apparent good health and strength, the suddenness and profusion of the hemorrhage, the absence of previous extravasation of blood, and other circumstances." (p. 778.)

(See, also *Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351.)

In this case if the added factor of his labor had aided in provoking the epileptic fit, it would bring the present case within the rule, and we would not hesitate to say that there was an accident arising out of the employment. But here there was no factor inherent in the employment or arising out of it which can be characterized as an accident which can be added to the disease as a contributing cause of plaintiff's injury.

Our attention is directed to some border-line cases where compensation was allowed:

In an English case, *Wicks v. Dowell & Co., Limited,* [1905] 2 K. B. 225, where an employee, while unloading coal near an open hatchway of a ship was seized with an epileptic fit and fell into the hold and was seriously injured, it was held that regard must be had to the proximate cause of the accident resulting in the injury, "which was to be found in the necessary proximity of the workman to the hatchway," and that it therefore arose 'out of' as well as 'in the course of' his employment.

In *Driscoll v. Employers'. Liability Assurance Corp'n, Ltd.,* 1912-1913 Mass. Workmen's Compensation Act, 125, compensation was allowed for the death of an employee who while driving an express wagon was seized with an epileptic fit and fell from the wagon and fractured his skull.

We would not say dogmatically that these cases were erroneously decided, but certainly they are border-line cases. Perhaps they can be justified because of the substantial and increased risk to which the workmen in each of these cases were exposed owing to the position in which they had to work.

We note that the Driscoll (Mass.) case was decided on the authority of the Wicks (Eng.) case. The Wicks case, *supra*, has not been consistently followed in England. Thus, in *Butler v. Burton-on-Trent Union*, V Butterworths' Workmen's Compensation Cases, n. s., 355, the master of a workhouse, while on duty, was sitting on the top of a flight of steps at the hospital in which he was employed. He was suffering from tuberculosis, and while seized with a fit of coughing became dizzy and fell down the steps and sustained fatal injuries. Compensation was denied, the court holding that the accident did not arise out of the employment, that it was not due to the nature of the employment, nor to anything to which the employment required him to expose himself.

In *Honor v. Painter*, IV Butterworths' Workmen's Compensation Cases, n. s., 188, a workman while driving a delivery van was seen to fall from his van, "in what looked like a fit—it may not have been—and he died three weeks later." The Court of Appeal (Eng.) held that these facts did not establish, even by legitimate inference, that the accident and injury arose out of his employment.

In *Carroll v. What Cheer Stables Co.*, 38 R. I. 421, a hack driver had an attack of dizziness and fell from his vehicle and was injured. Compensation was allowed; but the court said:

"The evidence does not show, as claimed by the appellant, that the petitioner's fall was 'caused solely by the workman's previously diseased condition,' nor does the justice of the Superior Court so decide; the justice says in his decree 'the fall probably being due to dizziness or unconsciousness induced by a disease from which he was suffering,' etc. But the decree also finds that the accident was one 'arising out of . . . said employment'; there is at least as much evidence that the fall was due to an unexpected and accidental lurch of the hack into the gutter and towards or against the curbstone, as that it was due to dizziness or unconsciousness induced by disease. It seems to this court that the decision and the decree appealed from embody a conclusive finding of fact that dizziness or unconsciousness was not the sole cause of the fall and that there was evidence from which the justice could find as he did that the accident arose out of the employment." (p. 426.)

In *Kowalski v. Trostel & Sons*, 4 Ann. Rep. Industrial Commission (Wis. 1915), 17, a workman claimed that he bumped his head against an overhanging door while working in the respondent's plant, and fell in an unconscious state, and that

he remembered nothing further until he roused from his condition in the hospital several days later. On arrival at the hospital he was found to have a dislocated shoulder, a contused wrist and an incomplete inguinal hernia. No injuries of any sort were found on or about his head. The commission disbelieved his testimony that he had struck his head against the door; and found from the other evidence that his injuries were caused by his fall, and that the fall was the result of a faint or epileptic seizure, and his claim for compensation was denied.

In the case at bar the jury rendered special findings, one of which (No. 5) was that the proximate cause of the accident was not due to the plaintiff becoming dizzy and falling. The plaintiff was himself more candid and truthful than the jury, as is disclosed by his testimony quoted above.

It must be held that the accident which caused plaintiff's injury flowed from his epileptic seizure, and that this particular recurrence of periodic malady from which plaintiff had suffered for so many years was not provoked by his employment, nor did his employment contribute in any degree to ı ring on such epileptic seizure. Therefore, this is not a case of a personal injury arising out of the employment for which compensation chargeable to plaintiff's employer can be allowed.

The judgment of the district court is reversed, and the cause remanded with instructions to render judgment for defendant.