No. 30,438.

M. D. Farmer, *Appellee*, v. The Oklahoma Natural Gas Corporation and Southern Surety Company, *Appellants*.

(7 P. 2d 60.)

Opinion filed January 30, 1932.

*Stanley Garrity* and *R. Robert Cohn,* both of Kansas City, Mo., for the appellants.

*F. J. Oyler* and *G. R. Gard,* both of Iola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment on an award of compensation for injuries sustained by plaintiff in the service of the Oklahoma Natural Gas Corporation.

It appears that on August 19, 1930, the defendant corporation had a number of workmen, including plaintiff, engaged in moving a pipe line in a street in Chanute. While shifting a section of pipe, according to plaintiff's testimony, he felt a stinging sensation in his left leg. Shortly afterwards he collapsed and was compelled to quit work, and since then he has been unable to work at any kind of labor he knows how to do.

Touching the occurrence of his injuries, the plaintiff claimant testified before the examiner:

"When we were packing the last joint I noticed a sting in my leg, and we started to let it down, and then Miller, the boss, said move it ahead further. We laid the pipe down and I went back to the ditch and went to work, and the first thing I knew I just gave way. I told Parker, the timekeeper, my legs were just busting below the knees. He took me home. They kept hurting. Just seemed like it took all my strength. When we got home found the veins were swollen and they were very sore. They were sore when would touch them. The veins in both legs were enlarged. The left was the worst. Never had been bothered with them before, and this came on almost immediately after carrying the pipe. The lifting of the pipe was heavy. I was about the middle of the pipe and in quite a strain at times. Could not lay the injury to my legs to anything but the strain in carrying the pipe. The veins enlarged right away, but did not notice until I got to the house. Legs had pained me from the time I carried the pipe. . . .

"Q. You mean you collapsed? A. Yes, I just seemed like I had no strength, and was all in. Was strong before that day. Worked every day. Have done no work since. Tried to work a week after this happened at light work, . . . My nerves weakened on me and I kept that up for about six days and had to quit."

On September 23, 1930, plaintiff filed a timely claim for compensation with the commissioner of compensation. A hearing was conducted by an examiner on November 5, 1930, following which an award of compensation was made in claimant's behalf. Excerpts from the examiner's report read:

"The facts in the instant case certainly disclose that the varicose vein condition was not caused by the accident, but there is testimony to the effect

that the severe strain that the claimant was under was sufficient to aggravate this condition in his leg. The examiner is well aware that varicose veins are in most cases of congenital origin, and gradual in growth, but in the instant claim we have a man who had this varicose-vein condition in his left leg a number of years and was able to perform his work, and, owing to the sudden strain of heavy lifting, he felt sudden pain, was immediately disabled, and has been unable to work since that time. The examiner is of the opinion that the accident clearly aggravated and activated the condition in the claimant's left leg, and that he is entitled to compensation for the period of disability as a result of the aggravation and activation of the preëxisting condition. The examiner is further of the opinion that the employer should tender the claimant an operation, and that the claimant should accept this operation to relieve the condition in his left leg.

.    .    .    .    .    .    .    ,    .    .    .    .    .    .    .    .

"FINDINGS.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .,

"It is further found that the claimant herein sustained personal injury by accident arising out of and in the course of his employment; that as a result of such accidental injury the claimant will be disabled for a period of twenty-four weeks."

The examiner recommended an award of $288 in favor of the claimant, payable at the rate of $12 per week for twenty-four weeks. On December 3, 1930, the examiner's report was adopted and the award made accordingly.

Defendant acquiesced in that award and paid it according to its terms.

On February 16, 1931, plaintiff filed with the commission an application to modify the award, in which he alleged that since its allowance his disability had increased, and that he was then unable to perform any labor. Upon notice to the employer and insurance carrier, on April 21, 1931, a hearing before an examiner was held. Evidence for claimant was adduced which tended to show that he had not recovered his strength so as to be able to work; that he had tried to work; his legs ached and hurt him; his worst trouble was with his nerves; his legs did not hurt when he stayed off his feet, but at night the muscles of his legs would cramp. A Doctor Royster testified that the varicose condition of claimant's legs was permanent unless cured by an operation which was "not considered particularly dangerous." On cross-examination this doctor testified that he did not do any surgery and had "no occasion to know about it"—apparently referring to the efficacy of an operation to relieve claimant's ailments. The claimant himself was asked if he would submit

to an operation if the doctors agreed that it would put him on his feet and remove his disability. He answered, "Yes, but they don't all agree on that." Elsewhere he testified:

"I wouldn't want an operation; I don't think it would be any good. I don't want any operation; I don't want any man to stick a knife in me."

At the conclusion of the hearing it was agreed by counsel that a Doctor Lambeth, of Iola, should be appointed as neutral physician to examine the claimant; and accordingly the examiner wrote to Doctor Lambeth, advising him of his appointment and stating that claimant's attorneys would present him for examination. He was instructed to make his report in triplicate—one copy for the commission, one for claimant's attorneys, and one for R. Robert Cohn, attorney for defendants, addressed to his office in Kansas City, Mo. The examiner's instructions concluded:

"This report should cover whether or not Mr. Farmer's condition at this time is a disabling condition. If so, to what extent; whether a surgical operation is necessary or advisable; what relief might be obtained from such an operation; whether or not the condition may be cured or relieved without such an operation, and if so, in what length of time.

"It is possible that after receiving your report, the parties may desire to take your deposition, in which case you will be notified in ample time."

The record then reads:

"BY THE EXAMINER: The hearing of the matter, then, will be continued generally until the receipt of Doctor Lambeth's report, or, if necessary, until after his deposition is taken."

Doctor Lambeth reported to the commission as follows:

"APRIL 29, 1931.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"I have this date examined Mr. M. D. Farmer . . . and find him suffering from large varicose veins of both legs. This varicosity is very extensive, involving both the long saphenous veins with their tributaries below the knees and ankles.

"My conclusion is as follows: That he continue wearing the elastic support and also state that no operative work be done, either by the removal of the veins or by the injection method. In either method the seriousness must be considered as well as the end results obtained from such radical procedure, when such an extensive length and areas of veins is involved, the prognosis is not favorable, and the disability resulting would be greater than it is now."

This neutral physician did not send a copy of his report to defendants' counsel, and when that fact came to light, counsel for claimant sent a copy, adding:

"If you wish to cross-examine let us know and we will arrange to have it done right away."

The examiner also wrote to counsel for defendants:

"It appears from your letter that Doctor Lambeth did not carry out his instructions as to sending you a copy of his report. That is very unfortunate and is regretted by the commissioner, but there is nothing to be done about it now, and, in fact, it would make no difference with our decision, although, of course, we would like the record to be made as full as you desire. The only thing about his report that was any different from the other evidence in the case is the recommendation that no operation should be had—a matter too immaterial to justify a reopening of the case."

The matter of claimant's submission to an operation had been under consideration before the examiner. The record reads:

COUNSEL FOR CLAIMANT: "We will say to your honor that if it should develop that it is proper that he ought to submit to an operation from the testimony of experienced men and surgeons, that that would be done. . . .

"BY THE EXAMINER: . . . Do I understand, Mr. Cohn, that you do tender such an operation or do you want more time? . . . Do I understand that you do now make such a tender? I am not forcing you to do so, you understand, but I just want to understand you."

COUNSEL FOR DEFENDANTS: "I don't know whether the record covers that in the previous hearing or not. I am not in position right now to say."

Pursuant to the examiner's report the commission modified the award, and directed that the payments of $12 per week be continued until a total of 415 weeks' compensation be paid or until the further order of the commission.

On appeal from this modified award the facts and the pertinent law as disclosed by the record were reviewed by the district court, at which time defendants moved to strike the report of Doctor Lambeth from the record for various reasons, one being that there had been no opportunity to cross-examine him. This motion was overruled, and after a minor modification of the award to give defendants credit for the precise amount they had paid to the date of the judgment, the award as made by the commission was sustained and judgment given accordingly.

Defendants appeal, making several contentions which we will note in the order they appear in their brief.

It is first urged that the evidence does not sustain the findings and judgment that appellee suffered a personal injury by accident while engaged in the service of the appellant corporation on August 19, 1930.

Counsel for appellee suggest that this question was conclusively settled by the unappealed findings and award first made by the commission on December 3, 1930. Assuming, however, that the question is still open because of the second hearing which followed appellee's application to modify the award, and although the evidence may lack something of that convincing clarity and persuasiveness which an appellate court always desires to see before it affirms a judgment requiring a litigant to pay over money to his adversary, it must be held that it cannot be said as a matter of law that the evidence does not support the finding and judgment of the trial court. That court's jurisdiction is much broader than ours in this class of cases. (*Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818.) Appellants argue that the instant case is controlled by such precedents as *Hoag v. Laundry Co.*, 113 Kan. 513, 215 Pac. 295; *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516. In the Hoag case the workman was overcome and disabled by excessive heat while cleaning steam boilers. That disability reduced his powers of physical resistance so that pneumonia bacteria already in his system became active, with the result that he died of pneumonia seven days later. In that case there was no accident. In the case before us there was a sudden burning sensation in claimant's left leg, speedily followed by his collapse and inability to resume the labor he had been doing immediately before that event occurred. While there was evidence to show that the bursting of veins depends largely upon the preëxisting physical disposition of the sufferer toward varicosity, and presumably appellee's physical condition was of that sort, that fact would not bar a recovery under the compensation act. In *Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863, it was said:

"Cases there are too, many of them, where workmen by reason of constitutional infirmities are predisposed to sustain injuries while engaged in their labor, yet the leniency and humanity of the law permit them to recover if the employment itself contributes in some degree to bring about or intensify the physical condition which renders them susceptible to such accident and consequent injury. But in all such cases the employment must have some definite, discernible relation to the accident. Thus, in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, a workman whose labors in the dust of a cement mill for three years had impaired his lungs and who had not fully recovered from typhoid fever, miscalculated his strength while swinging a heavy sledge to break rock in a quarry, and suffered a pulmonary hemorrhage from which he died. It was held that notwithstanding his physical weakness predisposing

him to such fatality, his employment was a contributing cause of the accident —that it arose out of his employment, and his dependents were permitted to recover compensation for his death." (p. 324.)

Subsequent cases to the same effect were: *Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351; *Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168; *Riggs v. Ash Grove L. & P. C. Co.*, 127 Kan. 91, 272 Pac. 153; *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418.

There is no substantial comparison between the case at bar and that of *Taylor v. Swift & Co.*, supra, to warrant discussion.

Defendants' next contention was that the evidence does not support the finding that claimant's condition was aggravated by severe strain or lifting on the day of his alleged injury. On that point we note that Doctor Garlinghouse testified that varicose veins are generally inherited and do not develop suddenly, but can be made very much larger after sudden straining; and "straining of the muscles of the lower limbs of the body will have a tendency to enlarge those veins." Doctor Royster testified that heavy lifting would cause varicose veins. "If he [claimant] had a condition like this existing before, that sort of work he was doing . . . would aggravate it . . . lifting and a strain on the muscles, and the veins eventually give way. . . . Time required to produce varicose veins depends on many things. . . . Farmer's work on August 19, 1930, might aggravate his condition if there had been a weakening of the tissues up to that time." This testimony of the doctors, read in conjunction with claimant's own testimony as to the time, place, and circumstances when he felt the stinging sensation and his resultant collapse, seems to refute this contention of appellants.

Error is also predicated on the ground that the report of Doctor Lambeth, the neutral physician, was not sworn to and because defendants did not have an opportunity to cross-examine him. But it is clear from the record that the award was not based upon Doctor Lambeth's report. His report revealed nothing that was new or different from what the undisputed evidence of other physicians had already disclosed. And so far as regards his recommendation that no surgical or other treatment be attempted, the record is clear that defendants did not offer such treatment, nor adduce substantial evidence that such treatment would be likely to effect a cure. Moreover, defendants do not now suggest that they had any expectation that a cross-examination would have minimized the effect of Doctor

Lambeth's report advising against a surgical operation. Indeed, the colloquy between the examiner and defendants' counsel makes it clear, in our opinion, that the question of a possible cure for the ailments of claimant's legs was left in just the situation defendants desired—to furnish a talking point against the award in the district court and against its judgment in this court.

No substantial error of law appears and the judgment is affirmed.