No. 31,059.

PEDRO LEAMOS, *Appellee*, v. WILSON & COMPANY, *Appellant.*

(16 P. 2d 490.)

Opinion filed December 10, 1932.

*Arthur J. Stanley, Arthur J. Stanley, Jr.,* and *C. C. Keller,* all of Kansas City, for the appellant; *A. K. Gembick,* of Chicago, Ill., of counsel.

*Joseph Cohen,* of Kansas City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This is a workmen's compensation case. The judgment of the trial court was in favor of the employee, and the employer appeals.

The appellee was thirty-seven years old and had been in the employment of the appellant for seven years prior to December 18, 1931. He was employed in the beef cooler. It was his duty to handle the carcasses of the beef which were swung from a railing at the ceiling of the cooler. About eleven o'clock on the morning of December 18, 1931, a carcass fell. It weighed about 600 pounds. The hind leg of the carcass struck the appellee on the left side of the

chest. The roller fell and struck him on the head, knocking him down. At the time of the accident the appellee felt strong, vigorous and able to work, and weighed 148 pounds. The appellant's physician treated his head and he returned to his work, but found that he was unable to continue. He went to his home and was confined to his bed for eight days. At the time of the hearing before the commissioner, which occurred on March 28, 1932, the appellee weighed 123½ pounds.

It was agreed that the employee met with personal injury by accident arising out of and in the course of his employment, and that the parties were subject to the workmen's compensation act; that notice of the accidental injury and claim had been made as required by law, and that the average weekly wage of the complainant was $16.04.

The question before the commissioner and the trial court was the nature and extent of the injury. The commissioner found that the employee, as a result of the injury, was permanently and totally disabled, and that the award should be made for 415 weeks from December 25, 1931, at $9.62 per week, less $48.60, which had been paid. The district court adopted the finding of the commissioner and entered judgment accordingly.

The question hinges on the medical testimony. There seems to be little or no dispute that prior to and at the time of the injury the appellee was afflicted with chronic tuberculosis and that at the time of the hearing before the commissioner the disease had become active or acute. The theory of the appellee is that the injury to the chest or ribs, together with the appellee's confinement to his bed for a period of eight days, was the cause of the activity of the disease. On the day of the injury the appellee was treated by Doctor Sterrett, the company's physician. He treated the scalp wounds, but says there was no complaint made of any injury to the chest. He did not see him again until about January 7. At that time he had his chest strapped up and refused further examination. On December 30 he was examined by Doctor Norwood. At that time he was complaining of pains in his chest to the left of the sternum—about the fifth, sixth and seventh ribs. There was some swelling and some evidence of a possible fracture of the ribs. His temperature was abnormal. An X-ray picture was taken on January 15. The picture showed a few cases of mottling in his lungs—

calcified areas, and callus formation around the sixth rib near the sternal junction, indicating a fracture of the rib.

Dr. L. G. Allen testified that on February 15, February 17 and March 13 he made X-ray examinations of the ribs, dorsal vertebræ and lungs. The examination failed to disclose any fracture of the ribs.

"Examination of the lungs shows an extensive fibrosis of each lung field and calcified flecks in each hilus and through the mid-parenchym there was no evidence of tuberculosis consolidation.

"Q. What do you mean by that? A. The tuberculosis lesion when it involves the lung parenchym, the lung tissue itself, is accompanied as a rule by areas of consolidation, tuberculosis consolidation. In advanced tuberculosis, therefore, these areas of consolidation go on to cavity formation.

"There was no evidence in the X-ray examination of Mr. Leamos' chest of this latter condition, namely, an acquired parenchym of tuberculosis. There was evidence, however, of increase in the normal markings of the lungs as the result of the ingrowth of fibrous tissue and the presence of these calcified flecks which indicated undoubtedly that this fibrous tissue or this fibrosis was the result of an old tuberculosis infection. That in itself is not so significant, for the large majority of us have some of those changes. His changes were slightly more than that seen in the average individual."

He further testified that he looked for trauma and found none. There was nothing which would have a tendency to light up a fibroid pulmonary tuberculosis.

By agreement of the parties Dr. J. A. Fulton was appointed by the commissioner to make an examination of the appellee. His first examination was on March 15, and he examined him from time to time until March 25. During this time the appellee had an abnormal temperature and pulse. "The X-ray examination of the chest shows chronic fibroid tuberculosis; no evidence of acute pathology, no fracture of ribs. There is a spur on the superior border of the eighth dorsal vertebra, the result of a spondylitis. . . . This man is a chronic fibroid TB, I think, of many years' standing, with an acute fly-up at this time. This man is also a syphilitic of 14 years' standing; he has a 4-plus Wassermann, and that means that this man is truly a syphilitic."

The doctor's testimony was further to the effect that one may follow steady employment with chronic tuberculosis; that trauma severe enough to keep a man in bed for eight days might be sufficient to cause activity. Acute cold, loss of appetite, or anything that makes a patient below par has a tendency to cause an inactive case to become active. Anything that will cut them off from regular

routine, regular diet, loss of sleep and loss of appetite, may cause an inactive case to become active.

"A. First, I would want to say that the traumatism had nothing to do with the cause of his tuberculosis.

"Q. No, I mean the flare-up of the tuberculosis. A. Now then, to say a specific thing would cause this flare-up would be very difficult. If this man should have had an injury sufficient to cause him increased temperature, cause him a great deal of pain, put him to bed and during that time also he had an acute cold, the conditions together could cause an activity, and it is possible that an injury alone without acute cold is sufficient to lower this man's vitality, it is possible it could cause an inactive case to become an active case.

"COMMISSIONER BAKER: It would be a precipitating factor in this man's condition? The witness: Yes, it could be.

"Q. In your opinion from the history I have given you in that hypothetical question, would you say it might have been a contributing factor to the lighting up of the tubercular condition that you found? A. Of course, I don't know that. It could have been— . . .

"If everything else is eliminated, of course you would have to say the accident had something to do with this fly-up.

"This claimant shouldn't go to work. The syphilis is doing considerable harm, plus his tuberculosis. He has had no treatment for syphilis at all, if I understand him correctly. A man with tuberculosis and syphilis and running temperature and loss of weight, I do not believe he will ever go back to work, because these fellows don't have proper care and attention, medicine, etc., they won't take it. It is my opinion that he is permanently totally disabled from disease."

The appellant earnestly contends and ably argues that the evidence is insufficient to support the findings of the trial court.

The law is definitely established in this state that where an employee afflicted with disease receives a personal injury by accident arising out of and in the course of his employment, which materially aggravates or accelerates the disease, resulting in disability, compensation must be paid for such disability. (*Monson v. Battelle*, 102 Kan. 208, 170 Pac. 801; *Gilliland v. Cement Co.*, 104 Kan. 771, 170 Pac. 793; *Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351; *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 784, 297 Pac. 418; *Farmer v. Oklahoma Natural Gas Corp.*, 134 Kan. 629, 7 P. 2d 60.)

The rule is established by statute (R. S. 1931 Supp. 44-556) and the decisions of this court that the responsibility of determining the facts rests in the trial court, and this court is bound thereby, if there is any evidence from which a reasonable inference may be drawn to sustain the findings of the trial court. (*Shay v. Hill*, 133 Kan. 157,

299 Pac. 263; *Paul v. Skelly Oil Co.*, 134 Kan. 636, 7 P. 2d 73.) Under the rule thus established we are bound to accept as true the testimony most favorable to the appellee, and, if from this testimony a reasonable inference may be drawn which will sustain the findings of the trial court, it is the end of our jurisdiction. The evidence most favorable to the appellee is to the effect that prior to the injury he was vigorous and strong and weighed 148 pounds; that he received an injury to the head and chest and was confined to his bed for eight days; that he developed a temperature which continued until the time of the trial; at the time of the trial chronic tuberculosis, which had existed for some time prior to the injury, had become acute and the appellee was totally disabled; that the injury which resulted in lowering the appellee's vitality might result in causing chronic tuberculosis to become acute. It is quite clear that a physician cannot testify to a mathematical certainty that the traumatism caused the activity or lighting up of the disease. From these facts and circumstances it was the responsibility of the trial court to draw the ultimate conclusion. It concluded that the injury accelerated the disease resulting in disability. We cannot say that this conclusion is not supported by evidence.

The judgment of the district court is affirmed.