No. 34,827

HARVEY RAYNES, *Appellee*, v. RISS & COMPANY, *Appellants*.

(103 P. 2d 818)

Opinion filed July 6, 1940.

*Arthur J. Stanley, Lee E. Weeks, Leonard O. Thomas,* all of Kansas City, and *M. D. Campbell, Jr.,* of Kansas City, Mo., for the appellants.

*William Drennan, Otto Ziegelmeyer* and *Charles W. Lowder,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is a claim for workmen's compensation. Judgment was for the claimant awarding compensation. The respondent appeals.

The claimant was injured when he fell off a scaffold while working at remodeling a building. The claim for compensation was filed in due time upon Riss & Company. The only question in the case is whether claimant was employed by Riss & Company, a corporation. The commissioner of workmen's compensation found that he was not so employed and denied compensation. On appeal the district court examined the record made before the commissioner. The trial court made extensive findings of fact, concluded as a matter of law that claimant was an employee of Riss & Company and that under the facts and circumstances the respondent was estopped from denying that the claimant was in its employ at the time he was injured. The trial court awarded compensation. Hence this appeal.

Respondent argues in this court that there was no substantial, competent evidence to sustain the findings of the trial court. This requires an examination of the evidence. The claimant testified that he knew Hawks, the man in charge of the work; that he asked

Hawks what they paid. "He says, 'Well, I'll see the company and see what I can do for you.' And Monday afternoon I went up there and he says, 'Well, if the weather continues this way tomorrow morning you can go to work, but I wasn't able to get you but forty cents an hour.' I told him that was very little, but I was idle and I would take it"; that he saw Mr. Riss give Hawks directions as to work he wanted done and changes were made under the direction of Riss. He also testified as follows:

"Q. But that change was made under the direction of Mr. Riss, is that right? A. Yes, sir.

.    .    .    .    .    .    .   .   .   .   .   .   .   .

"Q. When Mr. Hawks hired you did he tell you for whom you were to work? A. Yes, sir. He said I was to work for Riss & Company."

He testified further that he saw from forty to fifty trucks belonging to Riss & Company going into and out of the building while he was working.

A workman testified that he changed a truss because Mr. Riss wanted it changed.

A permit to remodel issued by the city authorities, naming Riss & Company as the owner, was introduced. The address of the owner given was the address of Riss. This permit bore the date of January 22, 1936.

Riss testified that Riss & Company operated a truck line between Chicago, Kansas City, Denver and Dallas; that he negotiated for the building which had been an old car barn; that the title stood in the name of a young lady who worked for a law firm; that he made a down payment and gave a mortgage to secure the balance signed by himself and wife; that he made a deal with Hawks to repair the property, and he was to pay Hawks $25 each for removing the posts, twenty-five cents a yard for dirt to fill pits, and $250 for putting the front end in; and Hawks was to get all permits and furnish all material; that he had no control over the men working for Hawks; that he directed the moving of a partition two posts over, instead of three; that Riss & Company were renting the building from him at $250 a month on a month-to-month basis, with no written lease. The title insurance policy issued to him was then introduced.

On cross-examination he testified that the demand for compensation was received on March 20, and was signed for by the telephone operator for the Associated Freight Terminal, which he owned, but which had nothing to do with Riss & Company.

The secretary for Riss & Company testified that he paid bills for the officials of Riss & Company and kept them within the amount of their salary; that he did this for Mr. Riss, but he did not remember whether he did that on the job in question; that Mr. Riss' account was credited with $250 a month on the oral lease.

The real-estate agent testified that he first talked to Riss & Company about the building about a year before he finally made the sale to Riss, not Riss & Company; that he had the property for sale at the time he was testifying.

The application to the city for electric current was introduced. This application stated that Riss & Company was the consumer and Riss & Company made the deposit. It bore the date of April 17, 1936.

An electrical contractor testified that he did the electrical work in the building under a man named Carswell; that he received his pay by check on Riss & Company.

The secretary of the company was then recalled and testified that under the terms of the agreement with Riss, Riss & Company were to take care of the light and water.

The trial court made findings of fact and conclusions of law as heretofore stated, awarded compensation and entered judgment accordingly. The appeal is from that judgment.

It will be noted that claimant was injured on February 28, 1936; he served his claim for compensation on Riss & Company on March 20, 1936; that on March 20, 1936, the commissioner set the case to be heard on April 13, 1936; due to the fact that claimant was in the hospital the hearing was continued from time to time until September 14, 1936, and was finally concluded on September 28, 1936; at the hearing on September 14, 1936, was the first time claimant ever heard that Riss & Company claimed that Riss, and not Riss & Company, was his employer.

The trial court, in its findings, set out many details that were a matter of evidence. These findings recited the evidence generally upon which the claimant depended to establish his claim. The court then made a conclusion of law to the effect that claimant was entitled to the benefit of the workmen's compensation act as an employee of Riss & Company. This might have been placed under the head of findings of fact, but the fact that the trial court saw fit to call it a conclusion of law does not detract from its potency. If this finding or conclusion was sustained by the evidence we will not dis-

turb it on appeal. (See *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263; also *Leamos v. Wilson & Co.*, 136 Kan. 613, 16 P. 2d 490.) When considering such a question we will not weigh conflicting evidence and will draw all reasonable inferences in favor of the position of the prevailing party. We have the testimony of the claimant that he was told by the foreman that the company would pay him only forty cents an hour, and the statement of the foreman that claimant was working for the company. The trial court had a right to believe these two statements. Perhaps the reason the trial court did believe them was that the respondent did not put the foreman on the stand to deny that he had made them. We have further the various applications for utility service, which gave the company the permit to remodel, issued to Riss & Company as owner, and the fact that some of the laborers, at least, were paid with checks of Riss & Company.

It is true, as the trial court found, that Riss himself had the legal title to the building. In a case of this sort we will look through the form to the substance. The ownership of the legal title is not conclusive. The apparent ownership might be in Riss personally and the real ownership be in the company. There are so many unusual circumstances here, such as the lease being an oral one from month to month for such a large company, as well as the peculiar manner in which the payments were made to the workmen. When the trial court considered all these surrounding facts and circumstances it was justified in concluding that the manner in which the work was being carried on was a scheme and device to enable Riss or the company to evade liability. Under the testimony of Riss had the claimant made his claim for compensation to Riss he could have argued that it should have been served on the company instead. A workman is not obliged to be an expert accountant or a sleuth to ascertain for whom he is working. This claimant had ample ground to believe he was working for Riss & Company, and the trial court had sufficient evidence to warrant it in reaching the same conclusion. The law being what it is, the conclusion as to that fact reached by the trial court is all that matters.

Since we have reached the above conclusion as to the finding that claimant was working for Riss & Company, it will not be necessary for us to consider the interesting question of whether Riss & Company were estopped from denying that claimant was in its employ at the time he was injured.

The next argument made by respondent is that the employment

in which the claimant was engaged was not a part of the respondent's trade or business. Respondent was engaged in the operation of a fleet of trucks as a common carrier. It operated a truck line between Chicago, Kansas City, Denver and Dallas and did some intrastate business in Kansas. This building was being remodeled so that it would be suitable to use in connection with this business. Such a building was necessary to respondent in the successful carrying on of its business. The court passed on an analogous question in *Labostrie v. Weber*, 15 La. App. 241, 130 So. 885. There the court said:

". . . it is very clear that a building used to house the truck used by the defendant in the prosecution of his business as a furniture mover was connected with defendant's business, and work upon the destruction or construction of such a building is service incidental thereto." (p. 242.)

In *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, this court held that the work of erecting an oil derrick was part of the business of operating an oil lease. The maintenance of a storage place for trucks, and where they might be brought for repairs and servicing, is as necessary for the business as the building of an oil derrick is to an oil company.

In *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, the claimant was injured while working at filling in a ditch in which a gas pipe had been laid. The company argued that it was in the gas business and not the ditch-digging business and that the claimant was not injured while engaged in work that was a part of its business. This court followed the case of *Purkable v. Greenland Oil Co.*, supra, and held that the work of filling the ditch was an incident to the work of distributing gas.

The respondent relies on what this court said in *Setter v. Wilson*, 140 Kan. 447, 37 P. 2d 50. In that case the claimant was injured while doing some repair work on a building owned by the respondent and from which she received rents. This court held under all the surrounding facts and circumstances that in having the repairs done on this building the respondent was not engaged in the building business because the respondent did not devote a substantial part of her time to such operations. There is a marked distinction between that case and the case we are considering where the remodeling of this building was incidental to the successful operation of the truck company. The respondent also cites and relies on *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430. In that case

the claimant was injured while working for a contractor who was moving a house onto a lease operated by the respondent. This court held that the oil company was not engaged in the house-moving business and the work in which claimant was injured was not work which was a necessary incident of the operation of the lease, but a specialized work designed to equip the lease for operation. There was evidence in this record that the building in this case was actually being used for trucks of respondent while claimant was working on it.

The judgment of the trial court is affirmed.