### No. 39,773

ALMA D. NEILD, Widow; ALMA D. NEILD, Guardian of Minor Dependents (Robert H. Neild, Deceased), Claimant, *Appellee*, v. W. R. ELDRIDGE, doing business as Bob Eldridge Construction Company, Respondent, and MASSACHUSETTS BONDING AND INSURANCE COMPANY, Insurance Carrier, *Appellants*.

### No. 39,774

MARY MARGARET NEIGHBORS, Widow and Natural Guardian of Minor Dependents (Grover C. Neighbors, Deceased), Claimant, *Appellee*, v. W. R. ELDRIDGE, doing business as Bob Eldridge Construction Company, Respondent, and MASSACHUSETTS BONDING AND INSURANCE COMPANY, Insurance Carrier, *Appellants*.

(283 P. 2d 250)

Opinion filed May 7, 1955.

*C. Thomas Carr*, of Kansas City, Mo., argued the cause and *Thomas M. Van Cleave, Jr.*, of Kansas City, Kansas, and *John Murphy*, of Kansas City, Mo., were with him on the briefs for the appellants.

*Leonard O. Thomas*, of Kansas City, Kansas, argued the cause and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks* and *J. Donald Lysaught*, all of Kansas City, Kansas, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: These were claims for workmen's compensation. Neild and Neighbors were found dead in a pit, part of a sewage disposal plant. Their dependents made claims for workmen's compensation. In each case the examiner, the commissioner of workmen's compensation, awarded compensation. In each case the respondent appealed to the district court. The district court found among other findings that the relationship of employer and workman, as defined by the Kansas workmen's compensation law, existed on the date of the accidental death in that the deceased Neild had been employed by Neighbors, a foreman of respondent, with authority to hire deceased, for the purpose of assisting Neighbors in putting the sewage disposal plant in such condition of operation it could be approved by the Kansas State Board of Health. Judgment was entered accordingly. The two cases were consolidated in this court.

One of the specifications of error is, the judgments of the district court that the accidental injury and death of the deceased workmen arose out of and in the course of their employment with respondent were not supported by substantial, competent evidence.

The appeals are by the respondent and his insurance carrier.

They state the questions to be as outlined in the specifications of error. The real question before us is whether there was competent, substantial evidence that the decedents were employees of respondent when they met their death. There is not much dispute about the ultimate facts. The dispute is as to the final conclusion to be drawn from them. The whole affair turns upon a sort of corporate and financial legerdemain surrounding the construction of houses as a housing project by respondent.

W. R. Eldridge is an operator doing business as the Bob Eldridge Construction Company. He owned a tract of land in Wyandotte

county outside the city limits. He platted it into 140 lots, upon which he constructed houses as a Federal Flood Housing Project. As a part of this project, the Federal Housing Authority required a sewer system. He employed an engineer to prepare plans and designs. He filed these plans with the state board of health and received its preliminary approval. About the time he had built his last house he formed a corporation known as Crestview Homes Sewers, Inc. He, his wife and son, were the officers and directors of this corporation. Respondent and his wife shortly after this corporation was organized conveyed to it the ground upon which the disposal plant was built.

On March 31, 1952 Eldridge and his wife and the Crestview Homes Sewers, Inc. executed what they termed a "Sewer Declaration." In this they recited Eldridges were the owners of 140 lots in the subdivision. They were referred to as the "Developers." It recited they were constructing a sewage disposal plant which should meet the requirements of the state board of health and recited a corporation known as the Crestview Homes Sewers, Inc. should be charged with the operation of it; recited its location; stated the "Developers" had constructed and contemplated the construction of additional sewers to be used in connection with the disposal plant and they were desirous of providing for the operation of it through the corporation, known as the Crestview Homes Sewers, Inc., which is referred to as "Operators." The declaration then stated that the Developers declared that the future owners and residents of the real property should have the privilege of connecting with and the use of the sewage disposal plant; stated that all of the lots now owned by the Developers were subject to the terms and conditions of the declaration. The declaration then set out certain charges that could be made against the owners and certain regulations they must follow.

The 8th paragraph of this declaration was as follows:

"Subject to the provisions hereof the Developers agree to use their best efforts to construct said sewer system and disposal plant in a workmanlike manner and as prescribed and approved by the Kansas State Board of Health. It is specifically understood and agreed that said Developers shall be liable for the failure of said sewer system or disposal plant from any cause in the carrying and disposal of sanitary sewage for one (1) year from the date of final inspection and approval by the Kansas State Board of Health for one (1) year after date of acceptance by the Developers, whichever is later, and that thereafter

said Developers shall not be liable for the failure of said sewer system or disposal plant in the carrying and disposal of sanitary sewage."

This declaration was signed by W. R. Eldridge and Ruth Eldridge for themselves and by her as president of the Crestview Homes Sewers, Inc. and attested by him as secretary.

After the houses were built the sewer system was constructed following the execution of the documents just recited. The stock ownership in the Crestview Homes Sewers, Inc. passed to the lot owners and their officer. The Eldridges did not own any stock in it. Neighbors was a foreman for Eldridge in his building work and Neild was one of his gang, that is, he worked for Eldridge under the orders of Neighbors. They were both found asphyxiated in a pit, a part of the sewage disposal plant on the evening of May 30, 1953. Some time after the construction of the sewage disposal plant Neighbors was hired by the Crestview Homes Sewers, Inc. to be the maintenance man of it at a salary of $100 a month. The understanding was this work should not take more than an hour a day. During this time he and Neild continued to work for Eldridge. The plant failed to operate properly. It became a public nuisance. The stench was so bad there were many complaints from lot owners who had built houses in the vicinity of the plant. At this point the eighth paragraph of the Sewer Declaration came into play. By it the Developers had agreed to construct the disposal plant in a workmanlike manner and they agreed to be liable for the failure of it for any cause in the carrying of sanitary sewage for a year from the date of the final inspection and approval of the Kansas State Board of Health or the acceptance by the Developers, whichever was later. It was not approved by the board until after the death of Neighbors and Neild. As a part of this trouble Eldridge received a letter from the division of sanitation of the state board of health at Lawrence. This letter called Eldridge's attention to the fact that the sewage disposal plant was not working properly and that complaints had been received by the division of sanitation. He was ordered to come to Lawrence for a conference.

There was evidence that Eldridge directed Neighbors to go to Lawrence and appear for him at this conference. During this time there was evidence of an effort to make the disposal plant work. Neighbors and Neild spent most of their time every day at the plant. On the night before these two men were found dead Neighbors had expressed some worry because he was unable to get a pump out of

the pit in question. He had arranged for Neild to go with him the next day and see what could be done about it. About these facts there is no question.

The respondent argues the evidence shows the men were hired by the Crestview Homes Sewers, Inc. and not by him at the time of their untimely deaths. There was an intermingling of ownership and control from the time this construction first began upon this addition. The declaration, to which reference has been made, was between Eldridge and wife on one hand and the corporation owned by him and wife on the other. The relationship of the workmen to Eldridge, however, continued about the same. They were no doubt performing work for him when they were endeavoring to make the plant work, pursuant to the promises of Eldridge and wife in the 8th paragraph of the declaration.

Counsel for appellee stated in their brief as follows:

"We believe that the crucial and decisive question in these cases to be: Whose work was being performed at the very moment or time of the accident in the late afternoon or early evening of May 30, 1953?"

We shall examine this question in the light of what we have said in other workmen's compensation cases.

In *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263, we said:

". . . The function of this court is limited to determining if there was evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might reasonably be drawn, to sustain the judgment of the district court."

In *Mitchell v. Mitchell Drilling Co.*, 154 Kan. 117, 114 P. 2d 841, we said:

"Nor is it necessary the circumstantial evidence should rise to such a degree of certainty as to exclude every reasonable conclusion other than that found by the trial court."

In *Raynes v. Riss & Co.*, 152 Kan. 383, 103 P. 2d 818, we said:

"It is true, as the trial court found, that Riss himself had the legal title to the building. In a case of this sort we will look through the form to the substance. The ownership of the legal title is not conclusive. The apparent ownership might be in Riss personally and the real ownership be in the company. There are so many unusual circumstances here, such as the lease being an oral one from month to month for such a large company, as well as the peculiar manner in which the payments were made to the workmen. When the trial court considered all these surrounding facts and circumstances it was justified in concluding that the manner in which the work was being carried on was a scheme and device to enable Riss or the company to evade liability. Under

the testimony of Riss had the claimant made his claim for compensation to Riss he could have argued that it should have been served on the company instead. A workman is not obliged to be an expert accountant or a sleuth to ascertain for whom he is working. This claimant had ample ground to believe he was working for Riss & Company, and the trial court had sufficient evidence to warrant it in reaching the same conclusion. The law being what it is, the conclusion as to that fact reached by the trial court is all that matters."

We have evidence here that the sanitary disposal plant never had worked properly; that the respondent had a great interest in causing it to work properly; that Neighbors was his general foreman and Neild a member of his crew. They were engaged at the time of their death in making the plant operate as it should. They were not working as part-time employees for the Crestview Homes Sewers, Inc. We have no trouble in concluding there was substantial evidence that at the time they were asphyxiated Neighbors and Neild were doing the work of the respondent.

The judgment of the trial court is affirmed.